**FORT WORTH & DENVER CITY RY. CO. v. GREATHOUSE et al. \***

No. 12443.

Court of Civil Appeals of Texas. Fort Worth.
March 28, 1931.

Rehearing Denied May 2, 1931.

Thompson & Barwise, of Fort Worth, and Carrigan, King & Surles, of Longview, for appellant.

\*Writ of error granted.

E. W. Napier, of Wichita Falls, for appellees.

DUNKLIN, J.

There was a collision between a truck and a passenger train operated by the Fort Worth & Denver City Railway Company at a public street crossing in the town of Iowa Park. At the time of the collision, Joe Bailey Dean was driving the truck, in which was loaded some household furniture belonging to Mrs. L. V. Thomas, and riding therein with him were Mrs. L. V. Thomas and her minor child, J. D. Greathouse, and her mother, Mrs. Lizzie Greathouse. As a result of the collision, Mrs. Thomas was killed, and her mother, Mrs. Lizzie Greathouse, sustained some personal injuries, but J. D. Greathouse, the minor son of the deceased, six years old, sustained no injuries.

The accident occurred on November 3, 1928, and on November 27, 1928, a suit was instituted by Mrs. Lizzie Greathouse, as next friend for and in behalf of the minor, J. D. Greathouse, against the railway company for damages resulting to him from the death of his mother, which it was alleged was proximately caused by the negligence of the operatives of the passenger train in the following particulars: (1) That the crossing at which the accident occurred was one of the busiest streets in the city, notwithstanding which the train approached the same at a rapid and dangerous rate of speed; (2) that no locomotive whistle or bell was sounded; (3) the failure to maintain an automatic signal at the crossing to give warning of the approach of trains.

Damages were claimed for the minor for the loss of his support, education, care, training, and nurture which it is alleged he would have received but for the death of his mother. There was a further claim of $250, the value of some household furniture that was destroyed as a result of the collision, and which was being transported in the truck at the time, and which the minor inherited from his mother as her sole heir.

That suit was filed by W. J. Townsend, J. A. Lantz, and E. A. Martin, attorneys for plaintiff in the case. An answer was filed to that suit by the defendant, consisting of a general demurrer, general denial, and a special plea that the collision resulted solely from the negligence of the driver of the truck in failing to keep a proper lookout for approaching cars and failing to listen for such approach; and that Mrs. L. V. Thomas, the mother of the boy, was likewise guilty of contributory negligence in failing to exercise any care for her own safety and welfare. That answer was filed on December 28, 1928, and on the same date a judgment was rendered against the defendant in favor of Mrs. Lizzie Greathouse, for the use and benefit of the minor plaintiff, J. D. Greathouse, for the sum of $1,500, of which amount $600 was allowed the attorneys representing the plaintiff for their legal services. The judgment recites that it was rendered by virtue of an agreement by all the parties, with this further recital: "And the court having duly considered said agreement and having heard the evidence thereon, here and now finds that the same is in all respects reasonable and fair and supported by the evidence, and said agreed judgment is in all things affirmed and approved by the court."

The employment of the attorneys for plaintiff in that suit was evidenced by a written agreement dated November 26, 1928, and was executed by Mrs. Lizzie Greathouse for herself and as next friend to the minor, J. D. Greathouse, and by its terms it was provided that the attorneys, W. J. Townsend, J. A. Lantz, and E. A. Martin should prosecute to settlement, by suit or compromise, the claims of both Mrs. Greathouse and of the minor for damages growing out of the collision.

On January 3, 1929, the amount of $900, so recovered and set apart for the benefit of the minor, was deposited in the registry of the court with the clerk thereof, to be kept as a trust fund in accordance with the direction of the court, as required by the terms of the judgment rendered.

On December 31, 1928, which was the third day after the judgment heretofore mentioned was rendered, F. G. Payne filed in the county court of Wichita county an application for appointment as guardian of the person and estate of J. D. Greathouse, the minor. In that application it was alleged that the minor was entitled to a claim for damages arising from the negligent killing of his mother by the Fort Worth & Denver City Railway Company, which claim was of the probable value of $5,000; that the father of the boy had abandoned the child soon after his birth, and his whereabouts is now unknown; that the applicant was in no manner disqualified, and was a proper person to act as guardian of the person and estate of the minor; that the condition of the minor's estate is such as to require the immediate appointment of a guardian. That application was duly signed by F. G. Payne at the special instance and request of E. W. Napier, a practicing attorney at the Wichita Falls bar, who then presented the same to the judge of the county court, and on December 31, 1928, which was the same day the application was filed, the judge of the county court, at a regular term, appointed F. G. Payne as temporary guardian of the estate of the minor, with the further provision requiring the issuance of service of citation on the application to the next regular term of the court. $11,000 was named as the amount of the bond to be filed by the guardian; and on the same day, to wit, December 31, 1928, the guardian filed the

bond, and also took the statutory oath as such guardian. E. W. Napier and two others were appointed appraisers of the estate. The bond was signed by F. G. Payne as principal, with two sureties, one of whom was the said attorney, E. W. Napier, and the bond was approved on the same day it was filed.

On January 1, 1929, which was the next day after the appointment and qualification of Payne as temporary guardian, E. W. Napier, the attorney who had represented him in those guardianship proceedings, filed in the district court in which the minor had recovered the judgment noted above, and in the same case, giving its style and number, the following document:

"J. D. Greathouse, a minor vs. F. W. & D. C. R. R. Co. No. 22108-C

"In the Seventy-Eighth District Court of Wichita County, Texas.

"Now come E. W. Napier, amicus curi, and suggests to the court that this cause is being prosecuted in the name of J. D. Greathouse without authority, and that the agreed judgment rendered herein is void and ought to be set aside, and this cause dismissed for the reason that the plaintiff J. D. Greathouse is a minor, and that Lizzie Greathouse, in whose name the suit is prosecuted, is so mentally deficient that she is incapable of understanding the nature of the suit and the rights of the said J. D. Greathouse, and is incapable of qualifying as next friend herein, and does not understand and is incapable of understanding the nature and effect of the settlement and agreed judgment attempted to be effected herein, and for the further reason that the said minor has a guardian who has been appointed by the County Judge of this County, and who has duly qualified as such, and that this guardian, F. G. Payne, who resides in said county, is the only person who has authority to administer the affairs of said minor.

"That said minor has a good and meritorious cause of action against the defendant herein for the wrongful and negligent killing of his mother on or about the time alleged in the petition herein, and that the movant believes and therefore avers that in a suit before a jury a verdict could be procured and a final judgment rendered in favor of said minor in a proper suit for at least as much as Ten Thousand Dollars, and that the agreed settlement and judgment herein for $600.00 less forty per cent attorneys fees is therefore unreasonable and unconscionable, and is the result of undue influence and overreaching practiced on said minor and said Lizzie Greathouse by the defendant and its agents, and amounts to a fraud of the rights of said minor.

"Wherefore, your proponent, says that the said judgment ought to be set aside and that this suit be dismissed.

"E. W. Napier, Amicus Curi."

Prior to that time, and on November 9, 1928, the said Napier addressed this letter to the Fort Worth & Denver City Railway Company:

"E. W. Napier
"Attorney At Law
"Wichita Falls, Texas.
"November 9, 1928.
"Fort Worth & Denver City Ry. Co., Fort Worth, Texas.

"Gentlemen: I have been employed by Mr. G. L. Parton and his wife for the purpose of instituting a suit against your company for such damages as they may be entitled to as a result of the death of their son Raymond Parton, who was killed in a crossing collision in Iowa Park on the 3rd day of November. I have also been employed by Mrs. Lizzie Greathouse for the purpose of instituting a suit for such damages as she may be entitled to by reason of her injuries suffered in said collision, and also for such damages as might have accrued to her little grandson by reason of his injuries and the death of his mother, Mrs. L. V. Thomas.

"Of course, it would be very agreeable to me to settle this matter amicably, and if you are inclined to do so, I should appreciate an opportunity to discuss the matter with you to that end.

"In the meantime you are advised that these people have assigned to me a one-third interest in their claim and have given me the exclusive power to negotiate settlements.

"Yours very respectfully,
"EWN;ED          E. W. Napier."

On January 5, 1928, Mrs. Lizzie Greathouse, acting through W. J. Townsend, J. A. Lantz, and E. A. Martin, who were her attorneys of record in the same case, filed an answer to Napier's motion, resisting the granting thereof, containing a general demurrer, a general denial of the allegations contained in the motion, and other special matters not necessary to be noted.

On January 5, 1929, Napier's motion to set aside the judgment was overruled. The order overruling the same recited that the same had been duly considered.

On January 25, 1929, F. G. Payne filed with the county court his resignation as temporary guardian, with the request that he be discharged as such. In that application it was stated that there was on deposit in the registry of the district court the sum of $900 belonging to the minor, J. D. Greathouse, and that the same constituted all of the estate belonging to the minor. On the same day the county judge entered an order discharging Payne as temporary guardian.

On May 14, 1929, H. L. Hunter filed an application for appointment as guardian of the person and estate of J. D. Greathouse, the

minor, alleging in the application that the minor owned an estate of $900, consisting of the deposit of that sum in the registry of the district court. That application was signed by J. A. Lantz as attorney for the applicant, and also by H. L. Hunter; Mr. Lantz being one of the attorneys who had represented the plaintiff in the original suit filed by the grandmother. On May 14, 1929, H. L. Hunter was duly appointed temporary guardian of the estate of the minor and duly qualified as such by giving a bond fixed by the court in the sum of $2,000, which was duly approved by the county judge on the same day it was filed. The guardian so appointed then took the statutory oath as guardian, and on June 14, 1929, the temporary guardianship of H. L. Hunter was made permanent. Hunter then took down the $900 which had been deposited in the registry of the court in trust for the minor.

The present suit was instituted in June, 1929, by J. D. Greathouse, minor, acting by and through his legally appointed guardian, H. L. Hunter, to recover damages for the death of his mother growing out of the collision between the truck and the railway train, upon allegations of negligence on the part of the employees of the railway company in the following particulars: (a) The operation of the train at a speed of 50 miles an hour; (b) failure to sound the locomotive whistle or bell; (c) failure of the employees to keep a reasonable lookout for persons approaching the crossing where the accident occurred; (d) the failure to exercise ordinary care to avoid the collision after the employees observed the truck approaching the crossing and the peril of its occupants. Damages were claimed substantially as asserted in the original suit instituted by the grandmother. In the petition so filed, the proceedings in the former suit were recited, and the judgment therein rendered was sought to be set aside on the ground that Mrs. Lizzie Greathouse, the grandmother, who instituted the suit as next friend to the minor, was interested adversely to him, was mentally incompetent, and that she was induced to agree to the same by fraudulent misrepresentations made to her by the defendant's duly authorized agent, and that the settlement so made was an improvident one for the minor. The suit was filed by E. W. Napier, as attorney for the guardian.

Upon the trial of the case before a jury, a judgment was rendered in plaintiff's favor for the sum of $15,000, with a credit allowed against the same of the $1,500 awarded to plaintiff in the original suit. That judgment was rendered upon special findings of the jury, sustaining the grounds of negligence alleged in the petition, and rejecting the defenses of contributory negligence pleaded by the defendant; also that the settlement of the former suit was procured by fraudulent misrepresentations of one O. W. Portman made to Mrs. Lizzie Greathouse "that he had investigated the case and was familiar with the facts in the case, and that he had talked to the railway company's lawyers and stated to her that she could not recover anything in court"; that at the time she made the settlement Mrs. Lizzie Greathouse did not have "sufficient mental capacity to appreciate and understand the business in which she was engaged"; that the settlement so made was an improvident one for the minor; the damages assessed in favor of the minor was fixed by the jury in the sum of $15,000. From that judgment the defendant has prosecuted this appeal.

By appropriate pleadings, the defendant expressly pleaded the former judgment as res adjudicata and the settlement thereof as a bar to the present suit, and assignments of error are presented to the overruling of that defense. A number of other assignments are presented challenging the findings of the jury for lack of sufficient support in the evidence, and other matters not necessary now to be noted.

We shall first decide the question whether or not the defense of res adjudicata should have been sustained.

■■■■ It is hardly necessary to cite authorities to show that the burden was upon the plaintiff to overcome the binding effect of the former judgment; and, indeed, in his pleadings he expressly assumed that burden. Under that rule, it was incumbent upon the plaintiff, not only to show that there existed valid grounds for setting aside the former judgment, but also to show that the guardian was not guilty of negligence in failing to exhaust his legal remedies to set aside the judgment during the term of the court during which the same was rendered, and also some valid excuse for not prosecuting an appeal from that judgment. His want of diligence to pursue those legal remedies is fatal to this action in another suit to set aside and vacate the former judgment on equitable grounds. See Southern Surety Co. v. Texas Oil Clearing House (Tex. Com. App.) 281 S. W. 1045, and decisions there cited; Griggs v. Brewster (Tex. Civ. App.) 16 S.W.(2d) 839, and other decisions there noted.

Article 1994, Revised Statutes 1925, reads as follows:

"Minors, lunatics, idiots or non compos mentis who have no legal guardian may sue and be represented by 'next friend' under the following rules:

"1. Such next friend shall have the same rights concerning such suits as guardians have, but shall give security for costs, or affidavits in lieu thereof, when required.

"2. Such next friend or his attorney of rec-

ord may with the approval of the court compromise suits and agree to judgments, and such judgments, agreements and compromises, when approved by the court, shall be forever binding and conclusive upon the party plaintiff in such suit.

"3. In such cases when a judgment is recovered for money or other personal property the value of which does not exceed five hundred dollars, the court may by order entered of record, authorize such next friend or other person to take charge of such money or other property for the use and benefit of the plaintiff when he has executed a proper bond in a sum at least double the value of the property, payable to the county judge, conditioned that he will pay said money with lawful interest thereon or deliver said property and its increase to the person entitled to receive the same when ordered by the court to do so, and that he will use such money or property for the benefit of the owner under the direction of the court. * * *

"6. If any person has an interest in such recovery, the court may hear evidence as to such interest, and order such claim, or such part as is deemed just, to be paid to whoever is entitled to receive the same."

In Burke v. Northern Pac. Ry. Co., 86 Wash. 37, 149 P. 335, Ann. Cas. 1917B, 919, it was said: "In the absence of a showing to the contrary, it will be presumed that a judge who entered a consent judgment on the compromise of an infants' claim made the inquiry as to its benefit to the infant which his duty required."

In Thompson v. Maxwell Land-Grant & Railway Co., 168 U. S. 451, 18 S. Ct. 121, 126, 42 L. Ed. 539, the Supreme Court had this to say:

"It would be strange, indeed, if, when those authorized to represent minors, acting in good faith, make a settlement of claims in their behalf, and such settlement is submitted to the proper tribunal, and, after examination by that tribunal, is found to be advantageous to the minors, and approved by a decree entered of record, such settlement and decree can thereafter be set aside and held for naught on the ground that subsequent disclosures and changed conditions make it obvious that the settlement was not in fact for the interests of the minors, and that it would have been better for them to have retained rather than compromised their claims. If such a rule ever comes to be recognized, it will work injury rather than benefit to the interest of minors, for no one will make any settlement of such claims, for fear that it may thereafter be repudiated. The best interests of minors require that things that are done in their behalf, honestly, fairly, upon proper investigation, and with the approval of the appropriate tribunal, shall be held as binding upon them as similar action taken by adults. * * *

"Ordinarily * * * a court, before entering a consent decree, will inquire whether the terms of it are for the interest of the infants. It ought in all such cases to make the inquiry, and, because it is its duty so to do, it will be presumed, in the absence of any showing to the contrary, that it has performed its duty. * * * The consent decree shows fully the terms of the settlement, and it certainly is not straining the presumption in favor of judicial action to assume that the court would not have permitted the entry of this decree, providing for a settlement whose terms were thus disclosed, without being satisfied that such settlement was for the interest of the minors who were under its charge."

To the same effect see Weaver v. Vandervanter, 84 Tex. 691, 19 S. W. 889. A minor is bound by the judgment in a suit instituted by next friend, who is recognized by the court. Article 1994, Rev. Statutes, quoted above; Day v. Johnson, 32 Tex. Civ. App. 107, 72 S. W. 426. It is also the rule that the law imputes to a litigant notice of such facts as were within the knowledge of his counsel. Bradford v. Malone, 49 Tex. Civ. App. 440, 130 S. W. 1013, 1015. A motion need not necessarily be termed a motion for a new trial provided it is in legal effect such a motion and forms a sufficient basis for assignment of error. 3 Texas Jurisprudence, § 171, p. 263; Nalle v. Eaves (Tex. Com. App.) 5 S.W.(2d) 500.

In Waggoner v. Knight, 231 S. W. 357, by the Commission of Appeals, it was held, as quoted from the syllabus: "Where all the parties to the action in which a judgment was rendered were before the court on a motion to correct the judgment entry, and where the answer to the motion had raised the issue of fraud in the rendition of the judgment and had asked to have it annulled, the judgment on the motion correcting the judgment entry with no express disposition of issue as to the alleged fraud held res judicata as to the validity of judgment in subsequent action making attack thereon."

In 1 R. C. L. 1051, it is said: "Amicus curiæ has been defined as one who, as a standerby when a judge is doubtful, or mistaken in a matter of law, may inform the court."

Similar definitions are given in Bouv. Law Dict. Vol. 1, p. 188.

In Olcott v. Reese (Tex. Civ. App.) 291 S. W. 261, it is said: "Clearly, the office of amicus curiæ is to aid the court and is for the personal benefit of the court, and cannot be subverted to the use of a litigant in the case. Though the judgment recites that Judge Bland appeared as amicus curiæ, the facts

show that his appearance was that of an interested party."

■■ E. W. Napier, the attorney who wrote the letter set out above to the defendant, giving notice of his employment by Mrs. Lizzie Greathouse to prosecute the minor's claim for damages growing out of the accident, and who also represented Payne, the guardian, in procuring the latter's appointment as guardian, and filed the motion to set aside the judgment in the former suit after he became the attorney for the guardian, was likewise attorney for the plaintiff in this suit, and conducted the case for the plaintiff upon the trial. In the absence of some explanation to the contrary, those facts and circumstances were sufficient to raise the inference that the motion made by the attorney, nominally as amicus curiæ, to set aside the former judgment, was made in the interest of the guardian whom the attorney then represented. And said attorney, who conducted the trial of the case for the plaintiff in the present suit, failed to rebut that inference by taking the stand as a witness and denying it. And since the facts pertaining thereto were peculiarly within his knowledge, it must be presumed that his testimony would have been favorable to the defendant on that issue; and that presumption is chargeable to the plaintiff himself through his said attorney. Farmers' Guaranty State Bank v. Burrus Mill & Elevator Co. (Tex. Civ. App.) 207 S. W. 400, and authorities there cited; 10 R. C. L. p. 884, 885; 22 Corpus Juris, 115; 34 Corpus Juris, 449; 15 R. C. L. 757, par. 210.

■ Plaintiff in this suit having failed to allege and prove, as it was incumbent upon him to do, that the act of the attorney in filing and presenting the motion to set aside the former judgment was not authorized by the guardian, and having failed to request the submission of that issue to the jury, and no such issue having been passed on by the jury, and the grounds alleged in that motion being substantially the same as the grounds relied on in the present suit for setting aside the former judgment, it follows that the order overruling that motion, from which no appeal was prosecuted, constituted a bar to the present suit, independently of the issue as to whether or not Payne, the guardian, was chargeable with negligence in failing to take legal steps which were available to him, to complain of the former judgment by a motion for new trial, and to prosecute an appeal therefrom in the event that motion had been overruled. Ormsby v. Ratcliffe, 117 Tex. 242, 1 S.W.(2d) 1084.

■■ Even though it could be said that the judgment of the court overruling the motion made to set aside the former judgment was not res adjudicata as against the guardian representing the minor, yet Payne, the guardian, as soon as he was appointed, which was three days after the rendition of the judgment, was chargeable with the duty to ascertain the status of that litigation since reference to the claim was expressly made in his application for appointment as guardian. Furthermore, in his resignation as guardian, filed on January 25, 1929, he reported that there was on hand, belonging to the minor, $900 in the registry of the court, which had been recovered in the former suit. Even at that time it was not too late to file a motion for a new trial on the same grounds that had been alleged by his attorney, nominally as amicus curiæ, if he could have made proper showing that he was not guilty of negligence in failing to sooner learn of the grounds upon which that motion was predicated. And in this connection it is to be noted further that the term of the district court at which the former judgment was rendered on December 28, 1928, did not adjourn until January 25, 1929, more than one month after the guardian's resignation. It was incumbent upon the plaintiff in this suit to allege and show a sufficient excuse for the failure of Payne, the former guardian, to take legal steps by motion for new trial and appeal to set aside the former judgment. That issue was not submitted to the jury, nor was there any request for its submission by the plaintiff, and therefore he must be held to a waiver of that issue. Ormsby v. Ratcliffe, 117 Tex. 242, 1 S.W.(2d) 1084.

■■ The alleged mental incapacity of Mrs. Lizzie Greathouse to make a binding contract of settlement of the former suit could not be a ground for vacating the former judgment, unless it could be said that but for such incapacity she would not have agreed to the settlement. While there was a finding by the jury of such mental incapacity, no issue was submitted or requested as to whether or not Mrs. Greathouse would have made the agreement if she had been mentally normal; nor was there any finding by the jury on that issue; and therefore plaintiff is held to a waiver of any right to set aside the former judgment solely by reason of the finding of mental incapacity. And in this connection it is to be noted further that the proof showed conclusively that the compromise of the former suit was with the consent and approval of plaintiff's attorneys of record, who were reputable attorneys of the court, and whose good faith in the matter has not been challenged in this case, either by pleading or proof. Griggs v. Brewster (Tex. Civ. App.) 16 S.W.(2d) 839; Alexander v. Good Marble & Tile Co. (Tex. Civ. App.) 4 S.W.(2d) 636.

Appellee stresses the point that the compromise settlement and the judgment rendered thereon was void by reason of the personal interest of Mrs. Lizzie Greathouse aris-

ing from the agreement to settle both her claim and that of the minor for the aggregate sum of $2,700; $1,200 of which was to be paid to the grandmother and the balance to the minor. In that connection appellee cites the decision of this court in Gulf, C. & S. F. Ry. Co. v. Lemons (Tex. Civ. App.) 152 S. W. 1189. That was a suit to set aside a settlement of a claim due to a minor which was approved by the county court. The suit was tried in the district court upon a certiorari from the county court. The statute which authorized that procedure expressly provided that the trial of the case in the district court under such circumstances would be a trial de novo. It thus appears that, while the pleadings attacked the judgment of the county court approving the settlement as well as the agreement to settle, in the trial of the case in the district court it was not necessary to set aside the judgment of the county court, since the appeal had that effect, and the only issue tried in the district court was whether or not the agreement of settlement should be set aside. It thus appears that that decision is clearly distinguishable from the present suit, in that this suit was not a suit to rescind and cancel the compromise agreement, but to set aside the former judgment; involving different principles and a more burdensome undertaking.

Nor was there any finding of the jury that the fact of personal interest of Mrs. Lizzie Greathouse in the agreement for compromise or the alleged inability of Mrs. Lizzie Greathouse who testified upon the trial of the former case to understand the legal effect of the compromise agreement, or the alleged fraud inducing the execution of that agreement, or any other fact relied on by plaintiff in this case to vacate that judgment, was not brought to the attention of the court at the time the former judgment was rendered, either through fraudulent concealment or by neglect or oversight. And it is to be noted further that the plaintiff in this case did not request the submission of any such issue, or issues. Converse v. Davis, 90 Tex. 462, 39 S. W. 277; Weaver v. Vandervanter, 84 Tex. 691, 19 S. W. 889; 2 Freeman on Judgments (5th Ed.) § 727, p. 1538.

It is to be remembered further that it was not incumbent upon the defendant to request the submission of any of those special issues or any other issue upon which plaintiff's right of recovery depended. Osceola Oil Co. v. Stewart Drilling Co. (Tex. Com. App.) 258 S. W. 806.

For the reasons noted above, the trial court erred in overruling the defendant's motion for an instructed verdict on the defense of res adjudicata.

It therefore becomes unnecessary to discuss, and we do not determine, the merits of numerous other assignments of error presented in appellant's brief.

Accordingly the judgment of the trial court is reversed, and judgment is here rendered in favor of the appellant.