## No. 34,341

Irene Fotopoulos, a Minor, by Her Mother and Next Friend, Theoni Fotopoulos, *Appellant,* v. The Gas Service Company, *Appellee.*

(96 P. 2d 666)

Opinion filed December 9, 1939.

*Ezra Branine, Alden E. Branine, Fred Ice,* all of Newton; *W. L. Cunningham, D. Arthur Walker* and *W. E. Cunningham,* all of Arkansas City, for the appellant.

*Rodney Stone,* of Newton, *A. M. Ebright, P. K. Smith, R. A. Hickey,* all of Wichita, and *Robert D. Garver,* of Kansas City, Mo., for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This was an action for damages for personal injuries. A jury trial resulted in a general verdict for defendant. Plaintiff has appealed and contends the trial court erred in overruling her motion for a new trial, in the giving of. certain instructions, and in the admission of certain evidence.

The general facts may be summarized as follows: Paul Fotopoulos, a native of Greece but a naturalized American citizen, has lived in Newton more than twenty years. He was engaged in the restaurant business, operating the Sunflower Café. His family consisted of his wife and three children—a daughter Constance, about twelve years of age; a son Taki, about ten; and the plaintiff, about five. Their residence was in an apartment on the second floor, above the café which he operated. Defendant is a utility company furnishing gas at Newton. In the fall of 1936 Fotopoulos leased from the defendant a gas heater suitable for the apartment, for a monthly ·rental, except for the summer months. This was installed by the defendant and used until the spring of 1937, when it was disconnected and stored for the summer in a storage room of the apartment. On October 15, 1937, Mr. Fotopoulos requested defendant to again connect the heater, and defendant did so. On the evening of January 25, 1938, plaintiff's mother took her to a beauty contest at a picture show. Her mother had her dressed nicely in a real light dress. She was selected as one of the little girls to come back the next night. After the show they went home. It was about eleven o'clock and a cold night. When they went into the apartment the little girl stood by the gas heater while her mother went in the next room to lay off her wraps. She heard the little girl scream. Her dress was on fire. She was quite severely burned. On the front of · the heater was a door which had two rows of small windows fitted with mica or isinglass. On February 8, 1938, Mr. Fotopoulos notified defendant that one of the mica windows was broken in the door of the heater. Defendant sent its men and had it repaired.

The petition alleged the pertinent facts and charged defendant with negligence in this, that when the heater was reinstalled in ·October, 1937, the mica was out of one of the windows; that defendant's workmen installing the heater had their attention called to this and promised to repair it the next day, but failed to do so, and that plaintiff's dress was ignited by the heat or flame coming

through the opening where the mica was out of the window. Defendant in its answer specifically denied that the mica was out of the window when the stove was reinstalled. This became the controverted issue in the trial. Witnesses called on behalf of plaintiff tended to support the allegation that the mica was out of the window of the heater when it was reinstalled. Testimony on behalf of defendant, mainly its two workmen, Pierce and Nicodemus, who installed the heater, was to the contrary. The record tends to show some matters in connection with the testimony of some of the witnesses on behalf of plaintiff which naturally would keep their testimony from being as forceful as it might otherwise have been. Perhaps the detailed explanation by defendant's workmen of the manner in which the heater was reinstalled was convincing to the jury. We need not detail these matters. The credibility of the witnesses and the weight to be given to their testimony was for the jury and the trial court. Upon the issue framed by the pleadings there was ample, substantial, competent evidence to support the verdict for defendant, and it has received the approval of the trial court.

Several hearings were had on plaintiff's motion for a new trial. After the first hearing the motion was sustained and a new trial granted. On defendant's motion to reconsider that ruling it was reconsidered, the order sustaining the motion for a new trial was set aside, and the motion was denied. Upon plaintiff's motion to reconsider that ruling the court adhered to its ruling denying the motion for a new trial and specifically approved the verdict returned by the jury, and rendered judgment for defendant.

While the motion for a new trial set out most of the statutory grounds, plaintiff relied largely on newly discovered evidence, which arose in this way: Defendant's witnesses, Pierce and Nicodemus, had testified that when the heater was reinstalled in October, 1937, and they took it from the storeroom to the sitting room, past a railing at the stairway and a piano, it was necessary to turn the heater on its side. To do that without breaking the radiants, which are fragile, they took the door off the heater, which contains the two rows of small windows fitted with mica. This is not a door that opens and closes, but is fastened on with screws and fitted airtight around the edges. They testified they took off this door, took out the radiants, turned the heater on the side to get it into the room, carefully examined the burners of the heater, saw that they were in good condition, replaced the radiants, examined the mica in the win-

dows of the door, found them in good condition and replaced the door, and connected the heater with the gas pipe; that they then tested it to regulate the flow of gas and saw to it that the burners and radiants were functioning properly, and that the heater was in good condition before they left it. They further testified that when they went to examine the heater on February 8, 1938, they found the mica broken from one of the windows and cracked in another one; that they noticed the flame of one of the burners was red, which indicated there was a small piece of mica over the gas jet of the burner; that they then took off the door, took out the radiants and found broken pieces of mica under the radiants and near the burner; that these pieces were collected and found to be of the quantity of one of the mica windows. They were produced at the trial. After the trial experiments were made on behalf of plaintiff by placing new pieces of mica over the burner, and it was noticed that the flame was very red. Witnesses then were called who had been about the heater and given it more or less attention between the dates of January 25 and February 8 and who testified that they had not noticed any red flame of the burner. At the first hearing of the motion for a new trial the court regarded this as newly discovered material evidence, but on the later hearing concluded that there had been no diligence shown, that the evidence was only cumulative, and impeaching in character, and did not warrant the granting of a new trial.

Appellant now argues that since plaintiff was a minor she should not be charged with want of diligence of her counsel or her next friend. It is argued correctly that courts always are solicitous of the rights of minor litigants, and that this is in harmony with the law. Our statute (G. S. 1935, 60-406) provides that the action of an infant must be brought by his guardian or next friend. The law does not deem it wise to grant to a minor unlimited license to sue, but prefers he should be guided and directed by the discretion of some adult. (*Sutton v. Nichols*, 20 Kan. 43.) When an action is so brought, if the court deems it to be for the best interest of the minor, it has power to dismiss the action, or to substitute another as next friend of the minor, or a guardian to represent the minor. (See statute, *supra*.) If the minor is a defendant, the court should appoint a guardian *ad litem* to represent him. (G. S. 1935, 60-408.)

"Such persons are considered as agents or officers of the court, their office being to represent the interest of the infant in the litigation." (31 C. J. 1118.)

But when a minor, either as plaintiff or defendant, is properly represented by an adult next friend, or guardian, the course and conduct of the trial are governed by the same rules as apply to civil actions generally (31 C. J. 1164), and the general rule is "that an infant properly represented is bound by the adjudication to the same extent that he would have been had all the parties been adults, especially in cases where the infant appears as plaintiff." (31 C. J. 1166.) An infant has no general or absolute right to avoid a judgment or decree against him. In the absence of fraud or collusion a decree rendered for or against an infant in an action brought by him by his next friend cannot be repudiated by the infant simply because of his infancy. (31 C. J. 1169, 1178.)

In *Kistler v. Fitzpatrick Mortgage Co.*, 146 Kan. 467, 71 P. 2d 882, it was held:

"A minor defendant in a civil action, properly served with summons and represented at the hearing of the case by a guardian *ad litem*, duly appointed, is bound by the judgment to the same extent as an adult would be bound."

The same rule applies to a minor plaintiff represented by a guardian or next friend. (See Note in 9 A. L. R. 1537.)

*Railway Co. v. Lasca*, 79 Kan. 311, 99 Pac. 616, cited by appellant, is not in point. With respect to it, compare *Perry v. Umberger*, 145 Kan. 367, 371, 65 P. 2d 280. We have examined all the authorities cited by appellant on this point, but find it unnecessary to analyze or distinguish them at great length.

The rule seems to be well settled that an infant, properly represented by a next friend, or a guardian *ad litem*, in an action at law, and with competent counsel, in the absence of fraud or conduct amounting to fraud on the part of such next friend, guardian *ad litem*, or counsel, is bound by the same rules of procedure as an adult litigant. In addition to the authorities previously cited, the following cases, which list is not designed to be complete, support this view: *Richards v. Neault*, 126 Me. 17, 135 Atl. 524; *Harris v. Bigley*, 136 Ia. 307, 111 N. W. 432; *In re Estate of Kempthorne*, 188 Ia. 70, 175 N. W. 857; *Fort Worth & Denver City Ry. Co. v. Greathouse*, (Tex. Civ. App.) 41 S. W. 2d 418; *Kromer v. Friday*, 10 Wash. 621, 39 Pac. 229; *Burke v. Northern Pac. R. Co.*, 86 Wash. 37, 149 Pac. 335; *Keller v. Ry. Co.*, 113 W. Va. 286, 167 S. E. 448; *Byrnes v. Butte Brewing Co.*, 44 Mont. 328, 119 Pac. 788; *Butler v. Winchester Home for Aged Women*, 216 Mass. 567, 104 N. E. 451; *Kingsbury v. Buckner*, 134 U. S. 650, 10 Sup. Ct. Rep. 638, 34 L. Ed. 1047.

The affidavits on plaintiff's behalf in support of the motion for a new trial did not go directly to the controverted issue framed by the pleadings and tried in the action, namely, whether the mica was out of one of the windows of the heater when it was reinstalled in October, 1937. They went to the question as to whether, between the dates of January 25 and February 8, 1938, the burner of the heater burned with a red flame. Employees of defendant had testified that when they examined the heater on February 8 they noticed that the color of the flame of one of the burners or jets was red; that this indicated a small piece of mica was on the burner where the flame came in contact with it, and when they turned off the gas and opened the heater they found a small piece of mica over one of the burners. Plaintiff's affidavits on the motion for a new trial were by members of plaintiff's family and employees of Mr. Fotopoulos, who had been in the room where the heater was, more or less frequently within the time in question, and who stated that they had not noticed the redness of the flame. There were also affidavits by the chief of police, the fire chief, and an inspector for an insurance company, who had made some examination of the heater, and who stated that they saw no mica on or about the burner; and plaintiff's counsel and others conducted an experiment by getting a piece of new mica and placing it over the burner, when they noticed that it caused the flame to be red. The theory of all this was that the testimony of defendant's employees who examined and repaired the heater on February 8 was not worthy of belief; hence, the testimony offered on plaintiff's behalf by these affidavits tended to impeach defendant's witnesses upon a question incidental only to the main issue in the case as framed by the pleadings and tried by the court. Normally new trials are not granted because of impeaching testimony of this character.

Appellant's counsel argue that they were surprised at this testimony about the redness of the flame on February 8 because nothing had been said about that particular thing until in the opening statement of counsel, and hence they were not prepared to meet it, although all the witnesses whose affidavits were used on the motion for a new trial were known to plaintiff's counsel and plaintiff's parents, or one of them who had been assisting counsel in the conduct of the case. They all lived in or about Newton, could have been subpoenaed and produced as witnesses, and some of them did in fact testify with respect to other matters. We are not greatly im-

pressed with this argument. The trial lasted two days. No reason appears why some one of plaintiff's counsel could not have seen to it that these persons were subpoenaed and had them present to testify. It is more reasonable to believe that at the time counsel for plaintiff did not regard this particular thing as of any special importance. Plaintiff's counsel were not misled as to the issues upon which the case was to be tried, for they had been framed definitely by the pleadings. More than that, several months before the trial one of plaintiff's counsel had talked with Mr. Pierce, defendant's principal witness, with respect to the reinstallation of the heater, and had learned the witness would testify definitely that the mica was not out of the window of the heater at that time. There is no suggestion that defense was in any way concealed, or that there was any sharp practice on either side in the conduct of the case. There was nothing in these affidavits which required the granting of a new trial, and since the trial court was satisfied with and approved the verdict returned by the jury, the order overruling the motion for a new trial was proper.

At the trial, and before the instructions were given to the jury, the court submitted them to counsel and a recess was taken to enable counsel to examine them and to make suggestions or objections. Counsel for plaintiff made no objection to the instructions and no suggestions of amendments. Counsel for defendant objected to one or more of the instructions as prepared by the court and requested changes and additions. These objections were overruled and the requests denied. One of the grounds for plaintiff's motion for a new trial was the giving of erroneous instructions. On the hearing of the motion for a new trial counsel for plaintiff argued that instruction No. 6 was erroneous. In this court their principal argument is that instruction No. 5 is erroneous. It is the general rule that instructions not objected to become the law of the case. (*Thogmartin v. Koppel*, 145 Kan. 347, 67 P. 2d 571; *Stephenson v. W. R. Grimshaw Co.*, 147 Kan. 532, 77 P. 2d 981; *Fisher v. Central Surety & Ins. Corp.*, 149 Kan. 38, 86 P. 2d 583.) Notwithstanding that, we have examined the instructions and considered the criticism now made of them and find nothing seriously wrong with the instructions as given.

In the course of the trial a witness called by defendant was permitted to testify that the gas heater in question was an appliance which had been approved as not being inherently dangerous, and

that in the opinion of the witness, who had had many years' experience with gas appliances, that the heater was not inherently or imminently dangerous. Appellant argues this was not a subject of expert testimony and that it went to the ultimate facts for the determination of the jury. We think the point is not well taken.

We find no error in the record. The judgment of the court below is affirmed.