No. 36,169

George Harvey and Mrs. George Harvey, *Appellants,* v. Wilbur Cole, *Appellee.*

(153 P. 2d 916)

Opinion filed December 9, 1944.

*Robert Stone,* of Topeka, argued the cause, and *James A. McClure, Robert L. Webb, Beryl R. Johnson* and *Ralph W. Oman,* all of Topeka, were on the briefs for the appellants.

*O. B. Eidson,* of Topeka, argued the cause, and *T. M. Lillard, Philip H. Lewis* and *James W. Porter,* all of Topeka, were on the briefs for the appellee.

The opinion of the court was delivered by

Hoch, J.: This is an appeal from a judgment for the defendant in an action to recover damages for the wrongful death of a nine-year-old boy. The only errors assigned relate to the court's instructions to the jury.

In order to avoid a lengthy transcript of the testimony the parties agreed upon a statement of the facts developed at the trial. A shortened summary of the facts, taken from the stipulation, will suffice for our purposes. On October 16, 1941, Mrs. L. A. Boley, who lived south of Berryton, Kan., went to Berryton in her car to

get her two sons who were attending high school there. On their way home one of the sons drove and they stopped to pick up two of the older children of Mr. and Mrs. George Harvey, the appellants. Farther on they picked up three of the younger children of the Harveys, one of them being David, who was nine years old. They proceeded south to the intersection which was about a mile and a half west of the Harvey home. The Boley car pulled off on the west side of the highway on which it was traveling and stopped just north of the traveled portion of the east-and-west highway. It was then facing the southwest, with its left front wheel about seven feet, and the left rear wheel about six feet, from the west line of the traveled portion of the north-and-south highway. Stated in another way, the Boley car pulled off on the right side of the highway so that the left side of the car was six or seven feet from the west line of the traveled part of the highway.

Wilbur Cole, appellee here, who was seventeen years old and a student at the Berryton school, left the school soon after the Boley car had left. He was driving a car, and was a holder of both a driver's and a chauffeur's license. He saw the Boley car stop and pick up the two older Harvey boys, whom he knew. He knew where the Harveys lived and knew that there were some younger Harvey children but he did not know them and he did not know that the Boley car later stopped and picked up these younger children. About one hundred and fifty yards north of the intersection referred to there was a hill and as Wilbur reached the top of the hill he could see this intersection, and when he was about halfway from the top of the hill to the intersection he saw the Boley car standing still on the west side of the highway and saw people getting out on the west side of the car. At the top of the hill he had been traveling at thirty-five miles an hour. He slackened his speed and was going about twenty-five or thirty miles an hour as he was passing the Boley car. He did not see any small children alighting from the car.

As he drove along he was looking south—the direction in which he was going—and just before he reached a point opposite the rear end of the Boley car the roadway to the south was clear and unobstructed. He was then traveling in about the center of the highway, the traveled part of which was thirty feet wide. By mathematical calculation it thus appears that the center of his car was about twenty-one or twenty-two feet from the west side of the Boley car standing to the right of the highway.

David Harvey had been sitting on the lap of an older brother, in the back seat. When the right rear door was opened David got out and the older Harvey boys then got out on the same side and were standing there thanking Mrs. Boley for the ride when David ran around the front or south end of the Boley car and then ran out into the traveled part of the north-and-south highway. When Wilbur saw the little boy run out he applied his brakes as quickly as he could and swerved his car to the left in an effort to avoid hitting him, but David came into collision with the outside of the right front fender and was knocked a considerable distance to the west and south. As a result of his injuries David died while being taken to the hospital.

This action was filed by the parents of David on September 30, 1942, about a year after the accident. In their petition they alleged that Wilbur "did see, or could have seen David alight from the Boley automobile and proceed across the highway over which he was driving. Notwithstanding these things, the *defendant failed and neglected to give warning by sounding his horn and proceeded into the intersection at an excessive rate of speed which was far greater than was reasonable and prudent under the conditions then existing.*" (Italics supplied).

In his answer Wilbur alleged in substance that immediately prior to the accident he was driving his car in a prudent and careful manner; that he saw people getting out of the west side of the Boley car and standing there in a place of safety; that David ran out suddenly from around the front end of the Boley car and when he first came into view the front end of his own car was not more than eight feet from the point where the collision occurred; that by the exercise of every proper degree of care he was unable to stop or turn his car to the left sufficiently to prevent the collision.

The case was tried to a jury which brought in a general verdict for the defendant and answered special questions as follows:

"1. Was the defendant, Wilbur Cole, negligent in the operation of his automobile at and immediately prior to the collision. A. No.

"2. If you answer the foregoing question in the affirmative, then state of what such negligence consisted. A. ———

"3. If you answer question No. 1 in the affirmative, then state whether such negligence was the proximate cause of the death of David Leroy Harvey. A. ———

"4. Was the deceased, David Leroy Harvey, at and immediately prior to the collision, guilty of negligence which contributed to his death? A. No.

"5. Did the deceased realize the danger of attempting to cross a highway in front of an approaching automobile? A. Yes.

"6. Was the collision in question, resulting in the death of David Harvey, an accident, as that term has been defined in the Court's instructions? A. Yes."

Appellants contend that the trial court erred in giving instruction No. 17, and in refusing to give requested instructions Nos. 1, 3, 5, 6, and 7, and in denying their motion for a new trial.

It must be noted at the outset that the abstract does not disclose that any objection was made to any of the instructions. However, appellant's specification of errors refers to instruction No. 17 as having been given "over objections of plaintiffs" and this reference is not questioned by appellee. We shall assume that timely objection was made to instruction No. 17, but must assume that no objections were made to other instructions which are discussed by the parties. And no error is assigned in the giving of any of the other instructions.

Instruction No. 17 was as follows:

"In connection with the rule hereinbefore stated as to negligence and the ordinary care required to be exercised by persons for their own safety and the safety of others; it has been established by the evidence that the deceased was a little more than nine years of age at the time of his death and that the defendant was a minor seventeen years of age at the time of the occurrence in question. A child, *at least until he reaches the later years of his minority,* is not bound to exercise the same degree of care for his safety as is required of an adult. While there is no inflexible rule or standard of years which can be laid down as a guide in determining the question of negligence on the part of a child, yet it may be said to be *that degree of care and caution which is ordinarily exercised by children of the same age, intelligence, education and experience, under similar circumstances.* These elements, together with his familiarity with the surroundings and conditions existing at the time and place of the accident, are proper to be considered by you in determining whether the deceased or the defendant were able to understand and appreciate danger, and the degree of care required to be exercised by each to avoid injury to himself or to others." (Italics supplied.)

Appellants say that this instruction was prejudicial. There is no occasion here to discuss broadly the question of the degree of care required of a minor, and appellee does not contend that a minor is not liable for his torts. It is appellants' contention that when a minor applies for and is given a driver's and chauffeur's license he thereby forfeits any consideration on the question of negligence to which he might otherwise have been entitled. There is nothing in the statutes which so provides and no authorities have been called

to our attention nor have we found any which support that view. In a New Hampshire case (*Charbonneau v. MacRury*, 84 N. H. 501, 153:A. 457, 73 A. L. R. 1266) almost identical with the one before us the court said, with reference to a similar statute relating to drivers' licenses:

"The legislature has not declared that all successful applicants shall be deemed to be of equal capacity and discretion in operating a vehicle. It has not undertaken to deal with the rule of care at all. It neither expressly or impliedly authorizes the trier of facts to disregard the legally ascertainable defects of the actor when material to the issue of his reasonable conduct, whether he be an adult or a minor. The authorized license is not a certificate of the physical perfection of the adult or of the mental maturity of the eligible minor." (p. 514.)

(In the MacRury case, *supra,* will also be found an extensive collection of authorities on the general question of the degree of care required of minors. See, also, 73 A. L. R. 1277.)

Appellants also contend that the instructions erroneously placed David, a nine-year-old boy, and Wilbur, a seventeen-year-old boy, in the same class. We do not think the instructions are open to that construction. As will be noted, the jury was told that the degree of care required was that which is ordinarily required by "children of the same age, intelligence, education and experience under similar circumstances," and that a child is not bound to exercise the same degree of care for his safety "at least until he reaches the later years of his minority." By this instruction the jury was told to consider, in each instance, the different ages of the two boys on the question of negligence or contributory negligence, and to have in mind the degree of care exercised by children of like intelligence and experience under similar circumstances. Indeed, the instruction drew a line favorable to David by using the words: "at least until he reaches the later years of his minority." Such qualifying words could not refer to a nine-year-old boy. We are fortified in the view that this instruction was not prejudicial by examination of the instructions as a whole, which cover eleven pages in the printed abstract and which, we think, covered fairly the contentions of the parties and fairly guided the jury as to the facts and issues to be determined.

Another contention of appellants is that the court injected an issue not properly in the case, such issue being whether the defendant could have avoided the collision after he entered the intersection and the young boy ran out in front of the car. They say that the negli-

gence alleged was not what was done after the defendant entered the intersection, but consisted of approaching the intersection at an imprudent speed and in not sounding the horn. We do not find the instructions confusing or misleading upon this question. The contentions of both parties were clearly stated. We need note only a few portions of the instructions.

The first paragraph of instruction 21 reads:

"It is claimed on the part of the plaintiffs that the defendant Wilbur Cole was negligent in driving his vehicle at the time in question in a careless manner and at a higher rate of speed than was commensurate with caution and prudence under the circumstances, and in failing to reduce the speed, turn aside or otherwise operate his car in a manner to avoid striking the deceased, even though David Leroy Harvey may have appeared in the path of his approaching car."

Nor do we think that other parts of instruction 21, to which appellants call attention, can be said to have misled the jury. Moreover, as heretofore noted, it does not appear that any objection was offered to the instructions when given.

Appellants further contend that upon the facts as shown the defendant was guilty of negligence as a matter of law. This contention is based principally upon the provisions of the statute (G. S. 1943 Supp. 8-5,102) relating to the installation and use of horns for giving warning, and that there was no testimony that appellee sounded his horn. There are several obvious answers to the contention. In the first place the court, in instruction No. 10, called specific attention to the statute and told the jury that the defendant was guilty of negligence if he failed to blow his horn under circumstances making it "reasonably necessary" to do so "to insure the safe operation" of his car. There was no objection to this instruction and by their verdict the jury absolved the defendant. Furthermore, there was no motion by the plaintiffs for a directed verdict. Apparently there was no contention at the trial that the evidence showed defendant to be guilty of negligence as a matter of law.

Appellants further urge that the court erred in giving instruction 22, which dealt with the question of "accident." But it does not appear, and it is not contended, that any objection was offered to the instruction when given and it and the other instructions not objected to became the law of the case. (*Haney v. Canfield,* 152 Kan. 597, 600, 106 P. 2d 662; *Montague v. Burgerhoff,* 152 Kan. 124, 128, 102 P. 2d 1031 and cases there cited; *Fotopoulos v. Gas Service*

*Co.,* 150 Kan. 738, 744, 96 P. 2d 666, and cases there cited.) Moreover, the giving of instruction 22 was not included in appellants' specification of errors.

We have carefully examined the instructions requested by appellants and not given by the court, as offered. It would unduly extend this opinion to include them here. In part they were fairly covered by the instructions that were given and we find no error otherwise in failure to give them.

Appellants stress no important questions involved in the motion for a new trial which have not already been discussed.

This case is of that sort which makes deep appeal to the sympathies. In such cases it is always possible to look back and see how the distressing event might have been avoided. But we cannot say that the case was not fairly presented to the jury. And the jury not only found, after hearing all the testimony and considering all the attendant facts and circumstances, that the defendant was not guilty of actionable negligence, but that no blame attached to the young boy whose untimely death was mourned by the bereaved parents and no doubt by all who knew him.

We find no error and the judgment is affirmed.

HARVEY, J., dissents.