No. 43,202

V. LORENE ALLEN and KENNETH EUGENE ALLEN, I, *Appellants,* v. JEFFREY ORVILLE ELLIS, JR., *Appellee.*

(380 P. 2d 408)

Opinion filed April 6, 1963.

*Oren Gray*, of Parsons, argued the cause, and was on the briefs for the appellants.

*Herman W. Smith, Jr.* and *Glenn Jones* of Parsons, argued the cause, and *Elmer W. Columbia* and *John B. Markham*, also of Parsons, were with them on the briefs for the appellee.

The opinion of the court was delivered by

WERTZ, J.: This was an action for damages for wrongful death brought by plaintiffs (appellants) V. Lorene and Kenneth Allen as parents and next of kin of their deceased minor son Kenneth Eugene Allen against defendant (appellee) Jeffrey Orville Ellis, Jr.

Except as they define the issues, the pleadings are unimportant and require little attention. All that need be said concerning them is that the petition as amended alleged that plaintiffs' son Kenneth was two years and nine months of age at the time of his death; that on June 16, 1960, at about 10:20 p. m., plaintiffs' son was walking across Main street in the city of Parsons and had proceeded past the center line of the street when he was struck by an automobile driven by defendant and was dragged approximately thirty-six feet. At the time of the collision the street was a four-lane, brightly lighted street, commonly referred to as a white way, having lights staggered every 100 feet with burning bulbs of 6,000 lumens or 600 candlepower; that as a result of the injuries received the child died within fifteen minutes after being struck.

The petition further alleged that the proximate cause of the child's death was due to six specified acts of negligence on the part of the defendant.

Defendant answered by way of a general denial, and as an affirmative defense alleged that the child's injuries and resultant death were proximately caused by the negligence of the parents, plaintiffs in this action. Plaintiffs replied by way of a general denial. On the issues thus joined the case was tried to a jury.

The pertinent evidence revealed that about ten o'clock on the night of June 16, 1960, plaintiffs' son was crossing Main street at Tenth from north to south in the city of Parsons. Main street is

also designated as US-160 and is a four-lane street running east and west, a well-lighted white way with 600 candlepower lights every 100 feet. The weather was clear and the street was dry at the time in question. Defendant's vehicle was in good working and mechanical condition. Highway Patrolman Pribbenow was a witness to the accident who testified that as he was driving east on Main street he first observed defendant's car at Thirteenth and Main; that defendant was directly behind him; that a car driven by James Woods pulled along beside him in the outside lane; that they stopped at Thirteenth and Main to await the change of the traffic light; that he, Patrolman Pribbenow, pulled away from the stop light ahead of the other cars; that when he arrived at the intersection of Tenth and Main the white way street lights were burning and he observed the lights of the filling station on the corner; that the lights were also on at the Crumpet Hut across the street; that there was a white way light on the southeast corner of the intersection and one on the side of the street west of where the accident occurred; that he saw the child Kenneth step down from the curb into the street and take two or three steps; that he had no trouble seeing the boy; that he passed the intersection, and on looking into the rear view mirror of his automobile he saw the boy pass the left front headlight of the defendant's car but did not see him pass the other headlight; that defendant's vehicle caught the child; that the street was sixty-six feet wide and he found the body forty-six and one-half feet from the north curb; that the child had been traveling in a north-to-south direction; that the boy's clothing was definitely red.

The patrolman further testified he heard no noise of brakes being applied; that he heard no horn sounded by the defendant; that the defendant had two girls beside him in the front seat; and that defendant was traveling twenty-seven or twenty-eight miles per hour.

Policeman Wilkerson testified that defendant was driving the vehicle and had two passengers with him—all three were sixteen years of age; that he found the child lying under defendant's car and that the child was "pretty well mangled," both legs and one arm were broken; that the street was well lighted, there being a service station there and a big white way light right on the corner and another on the opposite side of the street, also a well-lighted ice cream store that caters to teenagers; that about two blocks

south there is a park and swimming pool which are open to the public, the park being located just west of the swimming pool; that people take their children to the park for picnics; that there is a ball park just further east where children go to play. The officer testified the accident occurred in the business zone and that there was nothing between the white way light and the street where the boy would have been, no obstructions that make or cause shadows. He further testified he talked to the defendant later and that defendant said he did not see the child; further, that there are no crosswalks on either side of Tenth street at the intersection.

A Mr. Woods testified that he was a student, and on the evening in question, accompanied by two passengers, he was driving his Ford automobile; that he saw defendant driving his vehicle with two girls as passengers; that he passed defendant several times and defendant passed him several times; that the cars' windows were down and "I imagine we hollered at them or talked to them."

Woods further testified that when he stopped at Thirteenth and Main defendant's car was behind the state patrol car and that Woods' car was next to it in the right lane; that all three cars were headed east; that as they approached Tenth street he saw the child Kenneth; that it was light enough to see the boy and that he had no trouble seeing him leave the curb; that he, Woods, speeded up and signaled the patrolman to stop; that defendant's car was two or four car lengths behind Woods' car; that defendant did not apply his brakes nor sound his horn. Woods further testified he heard defendant say that he hadn't seen the boy at all.

Defendant testified that he had a driver's license with a restriction requiring him to wear glasses; that when he first saw him the child was in front of the left front fender; that he knew that this was a congested area, different businesses were located there, and children were frequently around the hamburger hut; that he knew of the park and swimming pool, and that he had seen a number of small children playing around both places; that as he approached the area in question he was thinking about who might be over at the Crumpet Hut; that he had seen numerous slogans and signs for purposes of protecting small children; and that if he had been looking directly to the left he could have seen the child Kenneth.

The case was submitted to the jury which returned its general verdict in favor of the defendant and its answers to the following certain special questions submitted to it by the court:

"1. Do you find that the plaintiffs, parents of decedent, were negligent, which negligence contributed to and was a proximate cause of the death of decedent?

"Answer: _____.

"2. Do you find that defendant, Jeffrey Orville Ellis, Jr., was confronted with a sudden emergency as defined by the Court's instructions, by Kenneth Eugene Allen II running into the street in the path of said vehicle?

"Answer: Yes.

"3. If you answer the foregoing question in the affirmative, do you find that defendant, Jeffrey Orville Ellis, Jr., exercised due and reasonable care under circumstances then confronting him, to prevent said accident?

"Answer: Yes.

"4. Do you find that the defendant was guilty of negligence which was the proximate cause of the death of the decedent?

"Answer: _____.

"5. If you answer Question Number 4 in the affirmative, please state of what act or acts of negligence you find the defendant guilty.

"Answer: _____.

When the jury returned to the box, the verdict and special questions were handed to the court and a conference was had between counsel. It was observed that questions Nos. 1, 4 and 5 were not answered, at which time plaintiffs' counsel requested the court to return the jury to the jury room to answer the special questions, and upon refusal by the court to so do, plaintiffs objected to the acceptance of the verdict or the acceptance of the special questions as answered.

From the overruling of their request plaintiffs assign error and contend that because the jury failed to answer the special questions submitted to it by the trial court they are entitled to a new trial.

While this appears to be a simple negligence action to recover damages for the wrongful death of a child, the court saw fit to give thirty-nine instructions, some of which are quite lengthy and contended by plaintiffs to be repetitious and erroneous.

The pleadings in this action were based upon negligence and the proximate cause of the injury and death. The court's instructions disclose eight on proximate cause and its application, and by instruction No. 38 the court told the jury:

"Certain special findings of fact have been submitted to you to answer and return with your general verdict herein. These questions you will answer fairly and impartially as you find and believe to be warranted by all the admitted facts and the evidence submitted to you."

Yet in view of the pleadings, notwithstanding its instructions on proximate cause and its directions to the jury to answer the special questions, the trial court refused plaintiffs' request to have the jury return to the jury room and complete the work that it was ordered to do in the inception.

The main object of special questions is to bring out the various facts separately in order to enable the court to apply the law correctly and to guard against any misapplication of the law by the jury. The failure of the jury to answer these questions evinces a lack of appreciation of its duty. (*Clawson v. Wichita Transportation Corp.*, 148 Kan. 902, 906, 84 P. 2d 878.) As early as *A. T. & Santa Fé Rld. Co. v. Campbell*, 16 Kan. 200, Justice Brewer stated that while the rule is general that wherever a question of fact is pertinent and an answer can be deduced from the testimony, it is the duty of the court to compel an answer, and refuse to receive a verdict until one is made. And again Justice Brewer, in speaking for this court in *City of Wyandotte v. Gibson*, 25 Kan. 236, stated that the party has a right in a jury trial to have answers returned to special questions as to material facts, and a denial of this right is error. When the court has decided to submit a question, ordinarily the jury should be required to answer it before they are discharged. In *Railway Co. v. Hale*, 64 Kan. 751, 753, 68 Pac. 612, it was stated that when special questions are submitted to a jury it may not ignore or refuse to answer them. A court should never submit special questions that are intended or are liable to confuse or entrap the jury into making mistakes, but, when submitted, it is the duty of the court to require direct answers to all such questions as are material and on which evidence has been offered.

In *Koehn v. Central National Ins. Co.*, 187 Kan. 192, 205, 354 P. 2d 352, it was stated:

". . . This court has held that litigants are entitled to have the jury fairly answer important special questions of fact based upon the issues of the case which were duly submitted by the court, and upon which competent evidence was produced. Under such circumstances, where the court fails upon timely request to require the jury to make complete and candid answers, it is reversible error. (Citing cases.)"

In the instant case the answers to the special questions were essential, under the pleadings, evidence, and instructions of the court, to the conclusion reached in the general verdict; and the trial court's failure to require the jury to answer the questions submitted by it constituted reversible error.

Over plaintiffs' objection Patrolman Pribbenow was allowed to testify on cross-examination that he had told counsel for defendant he was glad it wasn't he who was driving the defendant's car, because he, too, would have hit the child. This answer was purely a conclusion on the part of the witness and the testimony was highly prejudicial to the plaintiffs under the circumstances of the witness' testimony. It invaded the province of the jury on a material question of fact to be determined by it, and its admission constituted reversible error.

Complaint is made of the admission of two officers' testimony that no arrest of the defendant was made nor was any traffic ticket issued. All that need be said is that this was highly improper and prejudicial to the plaintiffs. The fact that the officers may or may not have performed their duty is no evidence that defendant was or was not negligent. The admission of one officer's report of his investigation and conclusions made thereon was highly improper, and such an offense against orderly procedure and good practice that it constitutes reversible error. (See, *Paul v. Drown*, 108 Vt. 458, 189 Atl. 144, 109 A. L. R. 1085, also Anno. p. 1089.)

Over plaintiffs' objection the court gave instruction No. 14, which, in pertinent part, reads:

"You are instructed that even though the defendant was the holder of a valid and unrestricted driver's license such license does not, in and of itself, require the same standard of care and caution as that required of by an adult driver's license holder. . . ."

This instruction was certainly prejudicial to the plaintiffs and erroneous as a matter of law. There is nothing in the Uniform Operators' and Chauffeur's License Act (G. S. 1961 Supp., Ch. 8, Art. 2) that makes any exception to the standard of care and caution required as between minors and adults. The act was passed for the protection of the general public and users of the streets and highways and not for the protection of immature, inexperienced and negligent drivers.

Plaintiffs further assert that the trial court erred in giving emergency instructions, applying certain statutes, and giving repetitious instructions on contributory negligence on the part of the plaintiffs. However, inasmuch as a new trial must be granted, these asserted errors need not be discussed, as it must be assumed that error, if any, on the instructions complained of will be taken care of by the trial court on future trial of the case.

In view of what has been said, it is apparent that the plaintiffs did not have a fair trial; therefore, the judgment of the trial court is reversed and the case is remanded with instructions to grant the plaintiffs a new trial.