No. 47,228

Dwayne Williams and Deloris Crist, *Appellants*, v. Glenn Esaw and San Ore Construction Company, Inc., *Appellees*.

(522 P. 2d 950)

Opinion filed May 11, 1974.

*Gerald W. Scott*, of Blair, Matlack, Rogg, Foote & Scott, P. A., of Wichita, argued the cause and was on the brief for the appellants.

*Raymond L. Dahlberg*, of Turner, Chartered, of Great Bend, argued the cause, and *Lee Turner*, of the same firm, was with him on the brief for the appellees.

The opinion of the court was delivered by

FONTRON, J.: The plaintiffs bring this action to recover damages for the death of their fourteen-year old son, Monty D. Williams, who was killed in a collision between his Yamaha motorcycle and a San Ore Construction Company truck driven by Glenn Esaw. The jury brought in a verdict in favor of the defendants and the plaintiffs have appealed, alleging various trial errors.

The accident occurred in Sedgwick county about 8:30 a. m., July 30, 1970, near the intersection or junction of 85th Street North, which runs east and west, and Interstate 35, a north-south highway. There is a grade separation where the two roads intersect, with I-35 overpassing 85th Street. A short distance east of the overpass an exit ramp leads from the south side of 85th to the interstate highway. On the date of the accident the exit ramp to I-35 was closed to public traffic and was so marked.

Monty Williams was proceeding west on 85th Street. He was on his way to a farm owned by his father near Valley Center, where he was to turn on the irrigation pump. At the same time the two-unit San Ore truck, composed of a tractor and a large water tank or trailer, was also headed west, the driver intending to make a left turn onto the exit ramp and then proceed to I-35 where his job was to spray the base of that highway. It was during the course of the left-hand turn that Monty's motorcycle skidded under the rear part of the water tank and both Monty and the cycle were dragged across the pavement into the exit ramp. Monty appears to have been killed instantly. It was not a pretty death. Further facts will be noted as needed.

Six points of error, in all, are advanced by plaintiffs in their brief, but only two were argued when the appeal was heard. We shall first consider these two points in the order presented.

A number of complaints are grouped together in point number one, the principle thrust of which are that the court erred in admitting Monty's restricted driver's license, and in instructing on the Oklahoma statutes under which the same was issued. The Oklahoma license limited the operation of motor vehicles by persons under sixteen to vehicles of five horsepower, and there was evidence to the effect the horsepower of the cycle manned by

Monty was greater than that, being in the neighborhood of fourteen or fifteen.

A strong argument is made by the plaintiffs in the area of causation. They stoutly contend that the Oklahoma license, with its horsepower restriction, bore no causal relationship to the accident—in other words that Monty's violation of the restriction, if any, was not a proximate cause of the collision and his resulting death.

It is a well recognized tenet of the law that before liability can be predicated on the violation of a statute there must be a causal relation between the violation and the injury complained of. This viewpoint is well expressed in *Zumbrun v. City of Osawatomie*, 135 Kan. 26, 10 P. 2d 3, in this language:

". . . It is familiar law that where there is no causal connection between the breach of a statute or city ordinance and the wrong or injury complained of, its violation does not bar a recovery. (*Williams v. Electric Railroad Co.*, 102 Kan. 268, 271, 170 Pac. 397; *Griffith v. Atchison, T. & S. F. Rly. Co.*, 132 Kan. 282, 286, 395 Pac. 687; 45 C. J. 902-905.)" (p. 34.)

This time-honored rule has been carried over into the area of motor vehicular accidents, where the violation of a traffic law, either state or municipal, is held to give rise to liability for injury to another only where the violation bears a causal or proximate relationship to the injury. (*Jones v. McCullough*, 148 Kan. 561, 83 P. 2d 669; *Clark v. Southwestern Greyhound Lines*, 148 Kan. 155, 79 P. 2d 906; *Applegate v. Home Oil Co.*, 182 Kan. 655, 324 P. 2d 203; *Oil Transport Co. v. Pash*, 191 Kan. 229, 380 P. 2d 341; *Ripley v. Harper*, 181 Kan. 32, 34, 309 P. 2d 412; *Rohrer v. Olson*, 172 Kan. 674, 677, 242 P. 2d 825; *Crawford v. Miller*, 163 Kan. 718, 721, 186 P. 2d 116; *McCoy v. Fleming*, 153 Kan. 780, 783, 113 P. 2d 1074.)

In *Goodloe v. Jo-Mar Dairies Co.*, 163 Kan. 611, 185 P. 2d 158, this court, in discussing motor vehicle collisions, spoke in this fashion:

". . . [M]ere violations of an ordinance or statute regulating traffic, such as excessive speed, defective equipment, driving down the center of the highway, or other matters of a similar nature, are not sufficient to make the driver of an automobile guilty of actionable negligence in an action involving a collision unless it appears from the evidence that such violations contributed to the accident and were the proximate cause of the injuries therein received. . . ." (p. 618.)

The same rule was declared in the more recent case of *Lewis*

*v. Service Provision Co., Inc.*, 209 Kan. 378, 382, 496 P. 2d 1373, where the plaintiffs, suing for the death of their son, attempted to make an issue of the fact that defendant's truck, which struck decedent's car pulling in front of it on I-35 near Guthrie, Oklahoma, was overweight under Oklahoma law. In the course of our opinion rejecting the plaintiffs' argument, we said:

"The violation of a traffic law does not establish actionable negligence as a matter of law unless it is made to appear that the violation was the proximate cause of the injury. . . ."

On the issue of contributory negligence, the question in the present case was not whether Monty violated Oklahoma licensing statutes, but whether he was guilty of negligence which was a proximate cause of the accident and his resulting death. The general law with respect to the violation of statutes regulating the licensing of drivers seems reasonably stated in 7 Am. Jur. 2d, Automobiles and Highway Traffic, § 368, p. 915:

". . . The absence of a valid driver's license, so far as it concerns the question of contributory negligence in an action to recover for injuries sustained in a motor vehicle accident, does not defeat recovery unless such licensing violation proximately contributed to the injuries in question."

This court expressed the same philosophy in an era when motoring was more novel than it is today. In *Anderson v. Sterrit*, 95 Kan. 483, 148 Pac. 635, the plaintiff was a sixteen-year old bicyclist who was injured in a night-time collision with an automobile. It developed that the plaintiff had no license to ride his bicycle and that he carried no light, both being contrary to city ordinance. In upholding the trial court's judgment in favor of the plaintiff, this court said that the absence of a license on the part of the plaintiff was not a factor causing the collision or contributing to the injury.

In *McCausland v. File*, 141 Kan. 120, 40 P. 2d 323, the plaintiff was a nine-year old child who was struck by defendant's car when returning home after a nine o'clock show. She was not accompanied by parent or guardian, as required by city ordinance. This court said in that case:

"There was no proximate cause of the plaintiff's accident in being unaccompanied by her father when defendant was negligently driving his automobile and causing the injury. None was alleged by defendant and it only gave the opportunity for the accident. . . ." (p. 121.)

The rationale of the foregoing cases was aptly phrased in *State v. Yowell*, 184 Kan. 352, 336 P. 2d 841, where the defendant was faced

with a charge of fourth-degree manslaughter as a result of a rear-end collision which occurred during the time his driver's license was suspended. In the course of delineating various legal rules pertinent to the situation, the court pointed out:

"Another rule is that some causal connection and/or legal relation between the commission of the unlawful act and the death must appear and that there must be more than a mere coincidence of time and place between the wrongful act and the death. For cases from courts adhering to this rule see *Thompson v. State of Florida*, 108 Fla. 370, 372, 146 So. 201; *Maxon v. State*, 177 Wis. 379, 385, 187 N. W. 753; *Votre v. State*, 192 Ind. 684, 685, 686, 138 N. E. 257; *The People v. Mulcahy*, 318 Ill. 332, 149 N. E. 266." (p. 361.)

We find no evidence in this record which warrants any conclusion that the rated horsepower of Monty's motorcycle was a proximate cause of the accident. It had little, if any, more to do with the cause of the collision than did Mr. Esaw's possessing only a driver's license instead of being licensed as a chauffeur.

The defendants argue, however, that in any event the evidence relating to the Oklahoma license and the court's instructions on the Oklahoma law could not have prejudiced the plaintiffs' case. We are unable to agree. Defense counsel bore down heavily on the horsepower limitation, both in cross-examination of the plaintiffs and in final summation to the jury. The impact of the license question on the minds of the jurors may be judged from the following question submitted during their deliberations: "What bearing does the license of deceased have on the case?" To this inquiry the trial judge, after considerable colloquy with counsel, provided this reply: "That is a fact question. That is for you to decide. The Court can't help you in any way with questions of fact." Obviously the jury was perplexed as to the relevancy of the Oklahoma restriction. Under the existing circumstances we cannot shrug off the error as being insubstantial.

The second point orally argued has to do with instruction sixteen, in which the trial court set out the provisions of original K. S. A. 8-540 (*a*) and (*b*) in their entirety. In 1968 this statute was amended and subsection (*c*), reading as follows, was added:

"(*c*) The foregoing limitations shall not apply upon a one-way roadway."

However, the contents of (*a*) and (*b*) were not materially changed, so far as the present action is concerned. The instruction, as given by the court, reads as follows:

"Section 8-540 of the Kansas Statutes Annotated provides as follows:
"(*a*) No vehicle shall be driven to the left side of the center of the roadway

in overtaking and passing another vehicle proceeding in the same direction unless such left side is clearly visible and is free of oncoming traffic for a sufficient distance ahead to permit such overtaking and passing to be completely made without interfering with the safe operation of any vehicle approaching from the opposite direction or any vehicle overtaken. In every event the overtaking vehicle must return to the right-hand side of the roadway before coming within 100 feet of any vehicle approaching from the opposite direction.

"(b) No vehicle shall, in overtaking and passing another vehicle or at any other time, be driven to the left side of the roadway under the following conditions: (1) When approaching the crest of a grade or upon a curve in the highway the driver's view along the highway is obstructed; (2) when approaching within 100 feet of any bridge, viaduct, or tunnel or when approaching within 100 feet of or traversing any intersection or railroad-grade crossing; (3) where official signs are in place directing that traffic keep to the right, or a distinctive center line is marked, which distinctive line also directs traffic as declared in the sign manual adopted by the state highway commission."

In voicing their objections to instruction sixteen the plaintiffs contended before the trial court, as they do here on appeal, that 85th Street North was a one-way highway at the point where the collision occurred and that the provisions of 8-540 (a) and (b) were not applicable because of subparagraph (c). Pursuing this line of argument the appellants requested that the following sentence be added to the instruction:

"The westbound traffic lane of 85th Street North at the site of the accident constituted a one-way roadway and there is no limitation on overtaking in the center lane."

In the event the additional sentence was not made a part of the instruction, the plaintiffs requested, in lieu thereof, that the jury be instructed as to the content of subsection (c). Neither request was granted.

So far as one-way roads or highways are concerned, the following statutes are relevant:

K. S. A. 1973 Supp. 8-541. "(a) The state highway commission and local authorities with respect to highways under their respective jurisdictions may designate any highway, roadway, part of a roadway or specific lanes upon which vehicular traffic shall proceed in one direction at all or such times as shall be indicated by official traffic-control devices.

"(b) Upon a roadway so designated for one-way traffic, a vehicle shall be driven only in the direction designated at all or such times as shall be indicated by official traffic control devices.

"(c) A vehicle passing around a rotary traffic island shall be driven only to the right of such island."

K. S. A. 1973 Supp. 8-539a. "Whenever any highway has been divided into

two (2) or more roadways by leaving an intervening space or by a physical barrier or clearly indicated dividing section so constructed as to impede vehicular traffic, every vehicle shall be driven only upon the right-hand roadway unless directed or permitted to use another roadway by official traffic-control devices or police officers. No vehicle shall be driven over, across, or within any such dividing space, barrier, or section, except through an opening in such physical barrier or dividing section or space, or at a crossover or intersection as established, unless specifically permitted by public authority."

Judging from diagrams and pictures admitted as exhibits, it appears that 85th Street North is a two lane road for most of its length, with one lane for traffic going west, and one for eastbound travel. However, the street broadens into four lanes some distance on either side of the I-35 overpass, and an island or medial strip extends east from the crossover point where the accident happened, a distance of some 200 feet more or less. A "Keep Right" sign is located at the east end of the island. At the time of the accident, no lines had been painted on the roadway separating the two west-bound lanes from each other or from the left-turn bay.

It has been the contention of the plaintiffs throughout this litigation that the place of collision was not an intersection within the contemplation of K. S. A. (now K. S. A. 1973 Supp.) 8-540 (a) or (b). The trial court, however, took the position that whether the situs of the accident was an intersection, as that term has been defined by statute, was a question for the jury to determine. We believe the court was wrong in this conclusion.

The question is not altogether free from doubt, and it obviously concerned the jury, as a second note to the court bears witness: "Was this turn where the accident happened considered an intersection?" The response was to quote the definition given in K. S. A. 1973 Supp. 8-501:

"Intersection. (a) The area embraced within the prolongation or connection of the lateral curb lines, or, if none, then the lateral boundary lines of the roadways of two highways which join one another at, or approximately at, right angles, or the area within which vehicles traveling upon different highways joining at any other angle may come in conflict."

Whether this response proved helpful to the jury must be left to conjecture.

Strictly speaking, the left-hand turnoff from 85th to I-35 does not fit the statutory definition of an intersection. Neither can it be said that 85th Street, throughout its full course, meets the statutory requirements of a one-way thoroughfare; for most of its length it appears to be an ordinary two-way, two-lane road. We entertain

the opinion, however, that as the street widens to four full traffic lanes, with a left turn bay at the east approach to the overpass, it becomes a legal equivalent of two one-way roadways, so far as the posture of this case is concerned. For a considerable distance there are two full traffic lanes for westbound traffic and two for eastbound traffic, separated by a medial strip or island, and traffic is directed to keep to the right to deter heedless motorists from swimming upstream, so to speak.

We believe it could not have been the legislative intent to preclude motorists from passing in the inside traffic lanes in such an area as this, and that the court should have determined as a matter of law that the area was not an intersection within the purview of K. S. A. (now K. S. A. 1973 Supp.) 8-540. This, of course, would not preclude the trial court from fashioning appropriate instructions as to the function of the left-turn bay in the overall traffic scheme of this state, and as to the purpose for which it may be used by members of the traveling public.

The four additional complaints urged in plaintiffs' brief must be mentioned. First, it is said the court erred in failing to instruct on last clear chance. This argument is based on various calculations made by a so-called reconstruction expert. The elements making up the doctrine of last clear chance have frequently been stated by this court and need not be repeated at this time. Those who may be interested, will find them delineated in the recent case of *Rohr v. Henderson*, 207 Kan. 123, 483 P. 2d 1089. Without belaboring the evidence, much of which relates to split second time sequences, we are of the opinion the overall pattern of this case does not fit within the framework of the last clear chance rule.

Plaintiffs further claim that error was committed in instructing the jury as to K. S. A. 8-543 (*a*):

"(*a*) The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicle and the traffic upon and the condition of the highway."

The defense of following too closely was not within the scope of the pretrial order made by the court, and this fact formed the basis of the plaintiffs' objection. However, the trial court permitted the pretrial order to be amended by adding the appropriate allegations. Since this case must be returned for a new trial we deem it unnecessary to determine whether the court abused its discretion in permitting the amendment.

An additional ground of complaint is directed toward the testimony of a defense witness touching the rated horsepower of the Yamaha motorcycle involved in the accident. It is contended that no foundation was laid. We cannot agree. The witness was shown to have been in the business of selling and servicing motorcycles for a period of six years, and was familiar with the Yamaha machine and the manuals and literature relating to the manufacturer's horsepower ratings. We cannot say from this record that the court erred in permitting the witness to testify. The weight to be given his testimony was, of course, a question for the jury.

Finally, the plaintiffs contend the court erred in failing to give a requested instruction based on PIK 4.03 relating to the degree of care required of a minor. The instruction asked for reads as follows:

"It has been established by the evidence in this case that Monty D. Williams was a minor fourteen (14) years of age at the time of his injury. With respect to the question of contributory negligence, you are instructed that a child is not bound to exercise the same degree of care for his safety that is required of an adult.

"While there is no inflexible rule or standard in terms of years which can be laid down as a guide for determining the question of negligence on the part of a child, the law requires of a child that degree of care and caution which is ordinarily exercised by children of the same age, intelligence, capacity, and experience, under the circumstances then existing, holding or having restricted driver's licenses."

In lieu of giving the requested instruction the trial court charged the jury as follows:

"You are instructed that as standards of ordinary care certain duties are imposed by law. They apply to persons who use the streets and highways. It is for you to decide from the evidence whether or not any of the following duties or laws have been violated.

"The violation of a duty or law is negligence upon which a recovery or denial of recovery can be based when such negligence is a proximate cause of the injury.

"This obligation rests on both adults and minors who operate vehicles on the streets and highways."

The PIK instruction is patterned after the language found in *Harvey v. Cole*, 159 Kan. 239, 153 P. 2d 916, a case which plaintiffs cite in support of their position. The force of *Harvey* as a precedent in cases of the present nature was severely eroded by our holding in *Allen v. Ellis*, 191 Kan. 311, 380 P. 2d 408, an action arising out of the death of a small child. The car which hit the child in the *Allen* case was driven by a sixteen-year old boy who had an unrestricted driver's license. The trial court instructed the jury that

even though the defendant had a valid and unrestricted license, such license did not of itself require the same standard of care and caution as that required of an adult license holder. On appeal, that instruction was held to be prejudicial and erroneous as a matter of law. In the opinion written by Justice Wertz, this court stated:

". . . There is nothing in the Uniform Operators' and Chauffeur's License Act (G. S. 1961 Supp., Ch. 8, Art. 2) that makes any exception to the standard of care and caution required as between minors and adults. The act was passed for the protection of the general public and users of the streets and highways and not for the protection of immature, inexperienced and negligent drivers." (p. 317.)

The *Allen* case was cited in *Kirkendoll v. Neustrom*, 379 F. 2d 694, where the plaintiff, a minor, had rear-ended the defendant's truck and sought to recover personal damages resulting from the collision. Judgment was entered for the defendant in that case.

Our decision in *Allen* is cast in the mold accepted by a majority of the courts in this country. In 97 A. L. R. 2d 872, Anno: Motor Vehicle—Minor—Negligence, the modern, and what seems to us the better and more reasonable view, is expressed in these words:

"The 'well settled' principle that a minor, although liable for his negligence, need not have conducted himself with adult prudence and circumspection but need have acted only as a reasonable person of his age and experience would have under similar circumstances is in serious question today insofar as its applicability to minor operators of motor vehicles or other motor-powered devices is concerned. Conscious of the increasing availability of automobiles, motorcycles, powerboats, airplanes, and similar devices to youthful operators, many courts have expressed concern with the fact that these instrumentalities are at least equally as lethal in the hands of an inexperienced teenager as they are when operated by an adult. These opinions emphasize the vast difference in destructive potential between modern motor-powered transportation devices and the usually innocent contrivances available to children in the bygone days when the rule of leniency was formulated. They point out that it is a matter of little consequence to the maimed pedestrian, for example, that his mechanized nemesis had not yet attained voting age. Taking what may be called the 'modern view,' these courts accordingly hold that when the minor engages in such activities as the operation of an automobile or similar power-driven device, he forfeits his rights to have the reasonableness of his conduct measured by a standard commensurate with his age and is thenceforth held to the same standard as all other persons." (pp. 874, 875.)

Cases from a good many jurisdictions are noted in the annotation supporting the majority rule. Among them is the *Allen* case. The author of the annotation acknowledges, however, a split of authority on the question, and he lists *Harvey v. Cole*, supra, as among the cases supporting the opposite view.

The *Harvey* case was set in an era thirty years removed from today's traffic norms. The intervening years have witnessed a fantastic growth in the outpouring of gas-gulping vehicles of tremendous speed and power. High speed roads and trafficways have proliferated. Traffic congestion has grown apace stifling many communities and fouling the good air. Traffic deaths have become a national reproach and traffic mayhem a commonplace. Motorized travel has expanded to a peak wholly undreamed of by those of us who, in 1944, could still recall the Model T Ford.

In the interest of public safety, we believe it imperative that minors be held to the same standards of care in the operation of motor vehicles as are adults. This view is reflected in many of the cases cited in the A. L. R. annotation to which reference has previously been made. In *Dellwo v. Pearson*, 259 Minn. 452, 107 N. W. 2d 859, 97 A. L. R. 2d 866, the Supreme Court of that state said:

"To give legal sanction to the operation of automobiles by teen-agers with less than ordinary care for the safety of others is impractical today, to say the least. We may take judicial notice of the hazards of automobile traffic, the frequency of accidents, the often catastrophic results of accidents, and the fact that immature individuals are no less prone to accidents than adults. While minors are entitled to be judged by standards commensurate with age, experience, and wisdom when engaged in activities appropriate to their age, experience and wisdom, it would be unfair to the public to permit a minor in the operation of a motor vehicle to observe any other standards of care and conduct than those expected of all others. . . ." (p. 458.)

In *Dawson v. Hoffmann*, 43 Ill. App. 2d 17, 192 N. E. 2d 695, the Illinois court, after paraphrasing much of what was said by the Minnesota court, concluded with this language:

". . . The law will not countenance the adoption of a double standard of care to be exercised by the drivers of motor vehicles.

"Accordingly, it is our opinion that in the operation of an automobile a minor must exercise the same degree of care as an adult . . ." (p. 20.)

See, also, Restatement, Torts, Second, § 283 A., Comment *c*.

We recognize a tendency on the part of some courts to apply a lesser standard of care in cases dealing with contributory negligence on the part of a minor than where primary negligence *is* involved. The Minnesota court, for example, suggests such a distinction. (*Dellwo v. Pearson*, supra, p. 457.) However, a majority of the modern cases dealing with the contributory negligence of a minor driver have applied the adult standard of care. (See Harper and James, The Law of Torts, Supplement to Vol. 2, Comment to

§ 16.8 nn. 11-12, p. 40; Restatement, Torts, Second, § 464, Comments *e* and *f.*) We see no good reason for drawing any distinction.

We disapprove of what was said in *Harvey v. Cole,* supra, as to the care required of children, insofar as the operation of motor vehicles by minors is concerned. Accordingly, we hold the trial court did not err in refusing to give the plaintiffs' requested instruction based on PIK 4.03.

The judgment of the court below is reversed with directions to grant the plaintiffs a new trial.