No. 12081

IN THE SUPREME COURT OF THE STATE OF MONTANA

1972

---

MAURICE R. STAGGERS and
HORTENSE JOHNSON,

Plaintiffs and Respondents,

-vs-

UNITED STATES FIDELITY & GUARANTY COMPANY,

Defendant and Appellant.

---

Appeal from: District Court of the Fifth Judicial District,
Honorable James D. Freebourn, Judge presiding.

Counsel of Record:

For Appellant:

John H. Jardine argued, Whitehall, Montana.
Chester L. Jones, Virginia City, Montana.

For Respondent:

Morrow, Nash and Sedivy, Bozeman, Montana.
Edward P. Sedivy argued, Bozeman, Montana.

---

Submitted: February 18, 1972

Decided: MAY 1 0 1972

Filed: MAY 1 0 1972

*Thomas J. Kearney*
Clerk

Mr. Chief Justice James T. Harrison delivered the Opinion of the Court.

This is an appeal by defendant, United States Fidelity and Guaranty Company, from a judgment entered in the district court of Madison County in favor of plaintiffs, Maurice R. Staggers and Hortense Johnson. Since the entry of the judgment Maurice R. Staggers has died; his estate has been probated in the state of Idaho and certified copy of the decree of distribution has been filed in this Court. The decree distributes all interest of the decedent in this cause of action to the surviving spouse, Hortense Johnson.

Plaintiffs brought this action against the defendant to recover under certain fire insurance policies as a result of damages which plaintiffs sustained from a fire which occurred on October 11, 1963. The jury returned a verdict for plaintiffs in the sum of $15,620. Defendant's motion for a new trial was subsequently denied and this appeal followed.

The sequence of events leading up to this action can be summarized in this manner:

Plaintiffs, Maurice R. Staggers and Hortense Johnson were elderly and lived in the Madison Valley area for many years. In 1958 Mrs. Johnson bought a Nashua trailer house and had it moved to what was known as the Stagger's Ranch, located some thirty-five miles south of Ennis, Montana. During the trial, these lands were referred to as the "Greenough Ranch". The title to the ranch was in dispute, although the transcript reveals Staggers had occupied the land prior to World War I. This property consisted of three cabins, in which Staggers had accumulated many possessions.

On April 30, 1963, Staggers purchased a fire insurance policy from Cloe Paugh, now deceased, but then an agent of defendant. She maintained her agency at Ennis. This policy covered household furniture and personal property contained in the three cabins. The face amount of the policy was originally $3,500, but at Stagger's request an additional $1,000 was purchased on July 1, 1963. On August 9, 1963, another policy was issued to Staggers, providing coverage of $4,500 on the Nashua trailer house and $2,000 on its contents. The

- 2 -

premiums were paid on the policies and they were in full force and effect on October 11, 1963.

Mrs. Johnson had been employed at various motels as a clerk and manager for many years, and was employed at the Kruse Motel in Idaho Falls, Idaho, during the year before and after the fire. She would go to the ranch in the fall, after the tourist season, and would stay there from time to time.

The day before the fire Staggers and one Roy Thompson, who was staying at a dude ranch known as Neely Ranch, had been at the cabins and trailer. The neighbors, Mr. and Mrs. Daryl Stroud, observed Staggers leaving the area about 5:00 p.m. and neither of them saw any fire in the area of the cabins or trailer house when Staggers left.

At the trial the plaintiffs' case consisted of testimony by them about the insurance policies, the items lost, their efforts in advising the defendant of their losses, and the fact that their claims had not been reimbursed by the defendant. Part of the defendant's case consisted of attempting to prove that the contents of the cabins and trailer had been removed by the plaintiffs prior to the fire and were still in their possession. However, at the trial plaintiffs' offered explicit testimony by certain witnesses which clearly negated any allegations by defendant that plaintiffs still held possession to items claimed to have been lost in the fire.

The issues in this matter are:

(1) Was the evidence sufficient to support the verdict of the jury as to its finding that proof of loss was tendered within sixty days after loss?

(2) Was there sufficient evidence to support the verdict of the jury based upon "substantial compliance" of the provisions of defendant's fire insurance policy?

(3) Was there sufficient evidence to support the verdict of the jury, based upon waiver?

(4) Was the verdict and judgment contrary to law?

(5) Was the court in error in excluding proposed exhibit "G"?

(6) Was the court in error in giving or refusing certain instructions?

In reference to the first issue on appeal, the district court properly reviewed this issue on defendant's motion for new trial, and by overruling said motion ruled the jury's verdict was supported by sufficient evidence.

This Court has on several occasions reviewed the rules on sufficiency of evidence. In Campeau v. Lewis, 144 Mont. 543, 547, 398 P.2d 960 (1965), we stated:

> "The Court has consistently held that the evidence is
> not insufficient if it is substantial. Adami v. Murphy,
> 118 Mont. 172, 164 P.2d 150. In the Adami case, the
> court, quoting from Morton v. Mooney, 97 Mont. 1, 33
> P.2d 262, held that 'substantial evidence' could be
> defined as such '"as will convince reasonable men and
> on which such men may not reasonably differ as to
> whether it establishes the plaintiff's case, and, if all
> reasonable men must conclude that the evidence does not
> establish such case, then it is not substantial evidence."'
> 118 Mont. 172, at page 179, 164 P.2d at page 153. The
> evidence may be inherently weak and still be deemed
> 'substantial,' and one witness may be sufficient to
> establish the preponderance of a case. Batchoff v.
> Craney, 119 Mont. 157, 161, 172 P.2d 308. Also, sub-
> stantial evidence may conflict with other evidence
> presented. Win Del Ranches v. Rolfe and Wood, Inc.,
> 137 Mont. 44, 49, 350 P.2d 581. We think these cases
> dealing with substantial evidence clearly outline the
> meaning of 'insufficient evidence' in the statute. The
> jury is delegated the task of finding the facts. Their
> verdict is based upon their findings. The trial judge,
> however, has the discretion to prevent a miscarriage
> of justice by granting a new trial if there is an in-
> sufficiency of evidence to support the verdict."

Specifically, defendant contends that its own method of calculation clearly shows the proof of loss was submitted on either December 20 or 21, 1963, thereby exceeding the sixty-day requirement for proof of loss. This Court has repeatedly indicated that it will presume that the jury, in reaching its verdict, followed the instructions that were given to it by the trial judge. Welsh v. Roehm, 125 Mont. 517, 241 P.2d 816 (1952). The defendant acknowledges the jury was fully instructed on the sixty-day requirement, and

- 4 -

that interest could be assessed accordingly. Our examination of the record reveals there was no specific finding by interrogatory in the verdict as to any specific date as to the submission of proof of loss by plaintiffs. The verdict was for a total figure of $15,620 and was not broken down as to principal and interest.

Secondly, we find no merit whatsoever in defendant's argument that there was not sufficient evidence to support the verdict of the jury based upon "substantial compliance" by plaintiffs with the provisions of the fire insurance policies.

Succinctly stated, the rule of "substantial compliance" is as follows:

> "Since a provision in a fire insurance policy requiring the filing of proofs of loss is to be liberally construed, there need be only a substantial, reasonable compliance with such a provision and a strictly literal compliance is not necessary." Couch on Insurance 2d, § 49:498, at Page 76-77.

Montana has applied the doctrine of "substantial compliance" for a considerable period of time. Da Rin v. Casualty Company of America, 41 Mont. 175, 108 P. 649. We feel the doctrine of substantial compliance is applicable to the resolution of this case, and our examination of all the testimony indicates indisputable evidence of substantial compliance by plaintiffs in furnishing defendant with a proof of loss.

On the morning of the day after the fire Staggers heard rumors of a possible fire at the trailer house and cabins. He immediately drove over to the fire scene and found that everything was burned to the ground. Staggers had been staying at the Neely ranch recovering from health problems. He then immediately called the agent Cloe Paugh who originally sold him the policies. The next day a Mr. Divel, who was an insurance adjuster, met Staggers and they along with Cloe Paugh went up to the fire scene and carefully covered and discussed the entire loss. Divel had some fifteen years of experience in adjusting fires and his company did adjustment work for the defendant. Divel took several photographs of the fire scene, all of which were marked and offered as

defendant's exhibits at the trial. These photos showed the remnants and debris of the trailer house and cabins. At the trial Divel testified that Staggers fully discussed with him the ownership of the destroyed structures and the contents in them. Divel testified he concluded at that time the loss was a total one and he was unable to determine the origin of fire. Further, on that day, October 12, 1963, Divel did not request any written statements from Staggers about the items of loss. The record further reveals that Cloe Paugh also felt the fire was a total loss. She reaffirmed this in her letter to the defendant on October 17, 1966.

About the same time Divel gave to Staggers a form to fill out entitled "statement of loss". Divel testified these forms were "standard company forms" for the purpose$ of helping the insured list their inventories of losses. Divel did not recall whether he told Staggers to send the completed "statement of loss" to himself or to Cloe Paugh but Divel did acknowledge ultimately receiving it. The record further reveals Staggers stayed at the Neely ranch a few days after the fire and then drove directly down to Idaho Falls to visit with Mrs. Johnson. At the time of the fire Mrs. Johnson was in the state of Utah attending the funeral of her father. Upon her return to Idaho Falls from the funeral one week later, the two of them began to compile the lists of personal property lost in the fire. The record shows these two elderly people worked diligently in this regard, relying much on their memory as they had no prior lists to work from. The two of them did complete the "statement of loss" and Staggers testified he took it to Cloe Paugh sometime before Thanksgiving of that year. It contained the lists of the property lost in the fire and the costs and values of such property. At this point the record discloses that everything seemed in order as far as the plaintiffs were concerned until they received a letter in January, 1964 from Divel requesting a narrative statement from them regarding the loss and expecting them to come to Ennis to do so. Staggers promptly responded to Divel by letter dated January 13, 1964, and stated as follows:

"Sorry to say I don't intend to be in Ennis till
last of May or June * * *. It would be much more satis-
factory with me if you could arrange a settlement for me
in the near future without me driving some 350 miles
over icy roads, that will require some expenses to me."

The record shows Staggers did not receive a reply from Divel to the
above letter and Divel admitted further at the trial that after he received
the letter the entire matter was referred from Divel's office at Ennis to
the Helena office. Divel further testified that when he wrote Staggers on
January 10, 1964 he knew Staggers was down in Idaho and it would be diffi-
cult for Staggers to come to see him. Approximately one month later a Mr.
Kennedy, who was an agent of defendant, visited with Staggers in Idaho Falls
about the fire but even at that time he did not ask for a narrative statement
or anything else. Staggers testified Kennedy told him the case was being
transferred to Idaho Falls so that "I wouldn't have to go to Bozeman". In view
of the foregoing it is difficult for this Court to comprehend defendant's
contention that plaintiffs' compliance in the matter was "half-hearted, in-
effectual, or careless compliance". On the contrary, our full review of this
matter leads us to the conclusion that plaintiffs did all that reasonable
persons would be expected to do under the circumstances they were confronted
with. They fully cooperated with Divel and Cloe Paugh in discussing all
aspects of the fire. The evidence shows the plaintiffs diligently filled out
the "statement of loss" forms. No objection whatsoever was ever made by de-
fendant regarding the validity of the "statement of loss" form until October
12, 1965, approximately two years after the fire, and even then no specific
points of dispute were alleged by defendant. At that date defendant company
wrote a letter to plaintiffs' lawyer and stated that "no proper proof of loss
was ever presented". This letter was written in reply to a letter from
plaintiffs' attorney to defendant transmitting a "Supplemental and Amended
Report and Proof of Loss" dated August 31, 1965. This document was prepared
at the direction of plaintiffs' attorney after plaintiffs came to him for
counsel in view of the fact they had not obtained payment on their claim of

loss for a period of two years since the fire.

On the basis of the foregoing facts the jury found that the plaintiffs did substantially and reasonably comply with the provisions of their respective insurance policies. The record herein lends sound credence to the diligence and good faith of these two elderly individual plaintiffs in complying with the proof of loss provisions contained within their policies. We feel the language contained in the early decision of Ohio Farmers' Ins. Co. v. Cochran, 104 Ohio St. 427, 135 N.E. 537, 539 (1922) adds thoughtful import to the crux of defendant's conduct and activity in this matter. There the Ohio Supreme Court was asked to decide the question of whether an insured substantially complied with a particular policy provision requiring a sixty-day notice of a fire claim and the Court stated:

> "The law of an insurance contract is not basically
> different from the law of any other kind of contract.
> Where there is substantial performance upon one side,
> there should be substantial performance upon the other
> side; and there is substantial performance upon one side
> when such performance does not result in any wrongful
> substantial injury to the other side.
>
> " * * *
>
> "It is time to get away from some of the old-time doc-
> trines--insuring the owner of property in 1 line, and
> then uninsuring him in the next 99, involving his con-
> tractual right in a maze of conditions precedent, con-
> ditions subsequent, conditions directory, and conditions
> mandatory, under a contract, requiring formal and
> technical exactness as to the manner and form of all
> these policy provisions in insurance risks, which are
> not required in any other kind of contract.
>
> "Under the record in this case, we find no prejudicial
> error materially affecting the substantial rights of
> plaintiff in error, and we further find under the record
> that substantial justice has been done."

In reference to the third issue on appeal, namely, was there sufficient evidence to support the verdict of the jury based upon the legal doctrine of waiver. Our examination of all the facts herein confirms there was sufficient evidence of waiver. The plaintiffs did everything reasonably required of them in processing their claim for loss. They diligently compiled the required information and promptly submitted it to Cloe Paugh

- 8 -

thinking nothing more was required. The facts bear out/ that the defendant, by its conduct, caused the plaintiffs to believe that nothing further of them was in fact required. No one on behalf of the insurance company, including agents Cloe Paugh or Divel, ever requested any further information from the plaintiffs until long after the sixty-day period had expired. Indeed it was not until January 10, 1964 that Divel ever wrote to the plaintiffs and even at that specific instance the defendant made no mention whatsoever about the timeliness of the furnishing of any information. It was more than two years after the fire before the defendant ever expressed any objection about there not being proper proof of loss. The Court's language contained in Snell v. North British & Mercantile Ins. Co., 61 Mont. 547, 553, 203 P. 521, bears direct applicability to the question of waiver as pertains to the facts now before us. In Snell this Court, in discussing the issue of waiver in fire insurance cases, stated the following:

" * * * It is conceded by defendant that if, in connection with the estimate or ascertainment of loss, defendant's agent so conducted himself that he misled the plaintiff and caused him to understand that nothing further would be required of him, such conduct would constitute a waiver. This is undoubtedly a correct statement of the rule. (26 C.J. 403, and cases cited.)

" * * *

"Upon the second ground the great weight of authority is to the effect that, if the assured attempts to comply with the requirement of the policy as to notice and proof of loss, the receipt and retention of proof of loss by the insurer without objection constitutes a waiver of its right to object thereto as not satisfying the require- ments of the policy. (26 C.J. 399, and cases cited.)"

On the basis of the foregoing as applied to the instant facts, we can only conclude defendant's receipt and retention of the "statement of loss", without objection, clearly and unequivocally constituted waiver of any subsequent claim by defendant of plaintiffs' failing to file a proof of loss. We further find no merit in defendant's argument that section 40-3733, R.C.M. 1947, prohibits waiver. Section 40-3733 does provide that the act of "Furnishing forms for reporting a loss or claim, for giving information relative thereto, or for making proof of loss, or receiving or acknowledging

- 9 -

receipt of any such forms or proofs completed or uncompleted" shall not constitute waiver. However, we deem it equally clear our legislature did not intend that an insurance company could furnish forms to the insured to fill out and then mislead the insured into believing that this was all the information required. Neither do we think our legislature would allow the insurance company to receive these forms and then retain them for a period of sixty days without objection and then later claim that the insured had forfeited all his policy rights.

As a corollary issue herein, defendant raises the applicability of section 40-3732, R.C.M. 1947, which concerns the furnishing of proof of loss forms, and making it a duty of the insured to request such forms. The evidence clearly shows Staggers requested and received from Divel and Paugh the proper forms, and the agents gave him forms marked "statement of loss", which he properly filled out. The defendant now infers that these "statement of loss" forms are something different from "proof of loss" forms. However, defendant offered no evidence as to what a "proof of loss" form was and we find nothing in plaintiffs' conduct to hold otherwise than that they in no way failed to perform any duty imposed by section 40-3732.

Defendant next raises the contention that the district court erred in excluding defendant's proposed exhibit G. Defendant's proposed exhibit G was a letter from attorney Jones, on behalf of Daryl Stroud, requesting plaintiff Staggers to remove his belongings from the cabin. The defendant contends that this letter would have some legitimate bearing on the motive for the fire. However, the record clearly shows that defendant offered no proof that plaintiff Staggers deliberately set the fire to the cabins. Both Mr. and Mrs. Stroud testified that when they saw Staggers leave the area the afternoon of the fire, they did not see any fire in the area. Thus, the defendant failed to show any relevancy, competency or materiality to defendant's proposed exhibit G.

Finally, defendant contends the district court erred in giving or

refusing certain instructions to the jury. Namely, defendant suggests that the court's instruction No. 9 and No. 10, relating to proof of loss, engender manifest inconsistencies. These two instructions clearly purport to set forth the correct principles of law concerning proof of loss and substantial compliance.

Defendant next objects to the court's instruction No. 16 on valued policy, which instruction was based upon section 40-4302, R.C.M. 1947, and reads as follows:

> "It is the law of the State of Montana that whenever any policy of insurance shall be written to insure any improvements upon real property in this state against loss by fire, and the property insured shall be wholly destroyed, without criminal fault on the part of the insured, the amount of insurance written in such policy shall be taken conclusively to be the true value of the property insured and the true amount of loss and measure of damages. You are further instructed that the Nashua trailer home in question is to be considered as an improvement upon real property, the agreed value of which is $4,500.00."

Section 40-4302, R.C.M. 1947, reads as follows:

> "Valued policy law. Whenever any policy of insurance shall be written to insure any improvements upon real property in this state against loss by fire, tornado or lightning, and the property insured shall be wholly destroyed, without criminal fault on the part of the insured or his assigns, the amount of the insurance written in such policy shall be taken conclusively to be the true value of the property insured, and the true amount of loss and measure of damages, and the payment of money as a premium for insurance shall be prima facie evidence that the party paying such insurance premium is the owner of the property insured; provided, that any insurance company may set up fraud in obtaining the policy as a defense to a suit thereon."

Instruction No. 16 applied solely to the Nashua trailer house which was covered by the insurance policy in the amount of $4,500. Agent Divel testified that the trailer house was a total loss. After reviewing all the testimony herein pertaining to the appropriateness of instruction No. 16, we conclude the district court properly determined, as a matter of law, that the trailer was an "improvement upon real property", within the meaning of section 40-4302, supra. The testimony shows the trailer house had been originally moved to its location at the Staggers ranch in 1958. It

was fully set up to live in, connected to a cesspool, and hooked up to a light plant. It was also connected to propane and oil tanks. We feel our decision in Meccage v. Spartan Ins. Co., 156 Mont. 135, 477 P.2d 115, clearly supports our conclusion that defendant's issue at bar is without merit. In Meccage we held that a trailer house was an "improvement on real property" under the definition of section 40-4302.

Lastly, defendant argues the district court erred in failing to submit to the jury defendant's proposed instruction No. 5, concerning the time when proof of loss was to be given as set forth in the policies. We find that this proposed instruction was repetitious of court's instruction No. 7, concerning proof of loss, substantial compliance and waiver, and No. 10 defining substantial compliance. It is clear therefore, that all matters in the offered instruction were fully covered in the instructions properly submitted, and accordingly the district court was not in error in refusing to submit defendant's proposed instruction No. 5.

Our complete review of all the testimony contained in the entire transcript of this appeal leads us to the conclusion plaintiffs were diligent, sincere, and completely proper in filing their claims in the above matter. On the basis of the foregoing and finding no reversible error herein, the judgment of the district court is affirmed, such judgment to be amended by the district court to show Hortense Johnson as sole owner thereof.

------------------------------
Chief Justice

We concur:

------------------------------

------------------------------

------------------------------

------------------------------
Hon. Jack Shanstrom, district judge, sitting in place of Mr. Justice Castles.

- 12 -