IN RE THE MARRIAGE OF ANTHONY J. CAPRICE, PETITIONER
AND APPELLANT, AND DOROTHY S. CAPRICE, RESPONDENT
AND RESPONDENT.

No. 14008.
Submitted Sept. 19, 1978.
Decided Oct. 11, 1978.
585 P.2d 641.

Goetz & Madden, Bozeman, William L. Madden, Jr., argued, Bozeman, for petitioner and appellant.

Morrow, Sedivy & Olson, Bozeman, Edmund P. Sedivy, Jr., argued, Bozeman, for respondent and respondent.

MR. JUSTICE SHEEHY delivered the opinion of the Court.

Appellant, Anthony J. Caprice, appeals from a property division and support judgment entered by the District Court, Eighteenth Judicial District, Gallatin County, without a jury, on July 11, 1977. Appellant filed his petition for dissolution of marriage on November 19, 1976. Respondent, Dorothy S. Caprice, answered and cross-petitioned for custody of their minor child and for child support, maintenance and attorney's fees.

Two hearings were held in this matter, one on February 8, 1977, which resulted in the dissolution of the marriage and reserved for later disposition the issues of custody, support, maintenance, visita-

tion and determination of property rights. The second hearing was held on June 22, 1977, following which the District Court issued its findings of fact and conclusions of law and judgment. The District Court gave custody of the minor child to respondent and neither this nor the granting of the dissolution is contested in this appeal. However, the District Court's division of the marital property is disputed and is the subject of this appeal, as is the court's award of $450 child support and maintenance.

Appellant and respondent were married in 1961. They have one child, Anthony, Jr., age 14. During most of their marriage, the parties resided in the State of Maryland, where they owned a home and other real estate. In 1976, they moved to Bozeman, Montana, where appellant still resides. At the time of the property division, appellant was 50 years old and respondent was 56 years old.

Prior to the marriage, respondent was employed as a fashion merchandising manager in large east coast fashion department stores. She has a college degree and has done work on a post graduate level in executive management. She also has training in interior design. Respondent has not worked however, since 1962 other than to wash the linen from her husband's beauty salon in Maryland. Respondent has claimed that illness is preventing her now from working although she admitted at trial she could work. At the time of the marriage, respondent owned an automobile and occupied a fully furnished six room apartment in which the couple moved after their marriage. Respondent's automobile was later traded in on an automobile which in turn was traded for one of the vehicles involved in the property settlement.

Until the move to Montana, appellant's principal occupation was part owner and operator of Caprice and George, Inc., a woman's beauty salon in Chevy Chase, Maryland. He started that enterprise about the time of his marriage to respondent. His gross earnings in recent years except when incapacitated by illness, had been approximately $20,000-$22,000 annually. Although no longer actively involved in the business, appellant stills owns a 50 percent interest in the enterprise. Appellant is currently employed

as a realtor in Bozeman, Montana and for the period January 1977 to June 1977 had grossed approximately $7,400 with expenses of $6,900 (including $2,000 of legal fees for litigation in which appellant was involved). During the marriage, the parties were able to acquire a home and a tree farm in Maryland.

In August 1975, appellant suffered a nervous breakdown brought about by financial, business and marital problems and was voluntarily hospitalized for a short period of time. Prior to his hospitalization, appellant gave to respondent his power of attorney.Appellant revoked it November 1975, while on a trip to New York following his release from hospitalization. During the effective period of the power of attorney, the sale of the tree farm was initiated by respondent. Additionally, respondent began and continued to manage the funds of the family, paying bills, handling travel expenses, etc.

The sale of the tree farm was consummated by respondent in December 1975. A sum of $68,823.77 was realized from that sale. All this money, except $30,000 was deposited by respondent in a checking and savings account with the First National Bank of Kensington, Maryland. Appellant was not a signer on this account. A sum of $20,000 of the $30,000 not deposited in that bank account was used by respondent to purchase a U.S. savings bond in her name and that of her son. Respondent claims this was for the child's education. Appellant claims it was to serve as a "tax shelter". The remaining $10,000 cash, respondent claims to have spent in repayment of loans taken from friends for living expenses during one of appellant's prolonged absences from home and for other living expenses. Evidence was introduced at trial however, showing that checks were also written during this period to cover the same "living expenses".

After appellant's release from the hospital, and his return from New York, he did not go back to work at Caprice and George, Inc. Instead, the family including appellant, continued living solely from the proceeds of the sale of the tree farm until their house was sold in June 1976.

In December 1975, the entire family vacationed in Florida for several weeks, paying for expenses from the proceeds of the sale of the tree farm. During the period June to August 1976, the family took two trips to Montana for which respondent withdrew $15,000 of the funds on deposit in the First National Bank of Kensington. Some of this amount was also apparently used for living expenses and repayment of loans, according to respondent, and $5,000 of it was given upon his demand to appellant.

In June 1976, respondent completed the sale of the home in Maryland with appellant's consent. A sum of $57,664.09 was realized from the sale. Of this amount, $5,000 was put into a joint checking account at Garret National Bank in Maryland and used for the benefit of both parties. The balance was deposited by respondent in the First National Bank of Kensington account. A certificate of deposit for the minor child in the amount of $10,000 was puchased with monies from this account and an additional $2,000 was withdrawn to be used on the first trip to Montana made by the family.

On August 17, 1976, $20,000 was withdrawn from the FNB of Kensington and deposited in the First National Bank of Bozeman, so the parties might purchase a home in Bozeman. On August 25, 1976, $2,000 was withdrawn from the FNB of Kensington by respondent in order to purchase a mink coat. The checking account in the FNB of Kensington was closed out by respondent in the sum of $8,318.12 on October 27, 1976. On November 17, 1976, the date of the filing of the dissolution petition by appellant, respondent closed out the savings account in the FNB of Kensington in the amount of $24,628.22. Respondent's accounting for these latter two amounts, totalling almost $33,000 is vague. The only explanation was that there were withdrawals for "living expenses" for the period from November 1976 to the date of trial in June 1977. Respondent claimed at trial that those funds are now dissipated. Respondent also indicated in her testimony that she had removed the funds to keep them from appellant and in order to support herself

and her son, and appellant may have taken part of the monies from her motel room. Appellant denies the latter claim.

The District Court in its findings and conclusions considered the duration of the marriage, the age, health, station, occupation, amount and sources of income, vocational skills, employability and needs of each of the parties. These are the pertinent factors to be considered under section 48-321, R.C.M.1947, before the District Court may apportion the marital property. The District Court found that the funds which appellant claims were unaccounted for by respondent were spent for living expenses by respondent. Finding of fact No. 5, findings and conclusions dated June 30, 1977. The District Court divided the personal property between the two parties; awarded the condominium at 1409 South Willson, Bozeman, Montana, to respondent and directed respondent to assume and pay the indebtedness due thereon; divided equally the $30,000 then in certificates of deposit and U.S. savings bonds between appellant and respondent; and by a further order of July 18, 1977, directed that approximately $4,000 in a savings account be used to make the payments on the condominium. The court awarded $250 per month maintenance and $200 per month support to respondent.

The issues presented in this appeal are two-fold: (1) did the District Court err as a matter of law in its division of the marital property by not crediting respondent with funds allegedly not accounted for, and (2) is there substantial credible evidence to support the District Court finding of fact that appellant has the ability to pay child support and maintenance totaling $450 per month? We hold the findings and conclusions of the District Court were supported by sufficient evidence with respect to these issues, and therefore the decision of the District Court is affirmed.

Appellant has argued that under this Court's decisions in *In re Marriage of Capener* (1978), 177 Mont. 437, 582 P.2d 326; *In re Marriage of Reilly* (1978), 176 Mont. 239, 577 P.2d 840; and *In re Marriage of Johnsrud* (1977), 175 Mont. 117, 572 P.2d 902, man-

date a reversal and remand in the present case for more specific findings. We do not agree.

■ The concern expressed in the above mentioned cases, apart from the obvious necessity for compliance with Rule 52(a), M.R.Civ.P. and to insure an équitable division of marital property, is two-fold. First, this Court requires specific findings to insure an adequate record for appellate review so that the unhealthy situation of speculation as to reasons for findings and conclusions on appellant review will not occur. *Capener*, supra at 328; *Johnsrud*, supra at 905. Secondly, such findings are important to the parties to insure a proper basis for the District Court to act in the event of any subsequent modification proceedings. *Capener*, supra.

■ In the cited cases, this Court found the findings to be insufficient to form an adequate basis for review. The findings before us in this appeal are not in such a state. Admittedly, the District Court here did not make an item by item finding based on the pertinent factors in section 48-321, R.C.M.1947, (though it would have been laudable had it done so), nevertheless we find the court did adequately consider those factors in section 48-321, R.C.M.1947, as evidenced by the findings and conclusions. Having determined the record as formulated below for review we now determine whether the District Court abused its discretion in making its property division and maintenance and support award. We are bound by the standard reiterated many times by this Court:

'It is well settled in Montana that a district court has far reaching discretion in resolving property divisions and its judgment will not be altered unless a clear abuse of that discretion is shown . . . The criteria for reviewing the district court's discretion is: Did the district court in the exercise of its discretion act arbitrarily without employment of conscientious judgment, or exceed the bounds of reason in view of all the circumstances . . ." *Zell v. Zell* (1977), 174 Mont. 216, 570 P.2d 33.

■ Appellant alleges respondent absconded with or has "stashed away" certain monies and the District Court abused its discretion by not crediting respondent with such funds in making the

property division. Our review of the record does not reveal an abuse of discretion on the part of the District Court. The only direct evidence in the record of the dissipation of these funds is respondent's testimony that she spent the monies on "living expenses". Admittedly her testimony appears vague, however, "the District Court is in the best position to judge the weight and credibility of the witnesses, especially where there is a conflict to testimony. *Miller v. Fox* (1977), 174 Mont. 504, 571 P.2d 804." *Easton v. Easton* (1978), 175 Mont. 416, 574 P.2d 989, 992. Further it is clear from the record that this family was accustomed to living on a cash basis and appellant, at least up until shortly before the petition for dissolution was filed, was participating in the family activities and thus involved in the incurrence and payment of living expenses. The sale of the family house which generated some of the monies in question was consummated obviously with appellant's consent, as he had revoked his power of attorney almost six months previously. Therefore, we cannot conclude the District court abused its discretion when it made its specific finding that monies not accounted for were dissipated by expenditures for living expenses.

The second issue presented in this appeal questions whether substantial credible evidence existed to support the District Court's award of maintenance and support. We find such evidence existed.

This Court's duty in reviewing findings of fact in a civil action tried by the District Court without a jury "is confined to determining whether there is substantial credible evidence to support them." *Hornung v. Lagerquist* (1970), 155 Mont. 412; 473 P.2d 541, 546; *Butte Teachers' Union v. Board of Education* (1977), 173 Mont. 215, 567 P.2d 51, 53. "Substantial evidence" is evidence such "as will convince reasonable men and on which such men may not reasonably differ as to whether it establishes the [prevailing party's] case, and, if all reasonable men must conclude that the evidence does not establish such case, then it is not substantial evidence . . ." *Staggers v. USF & G* (1972), 159 Mont. 254, 496 P.2d 1161. (Citing *Campeau v. Lewis* (1965), 144 Mont. 543, 398

P.2d 960.) The evidence may be inherently weak and still be deem-
ed "substantial" and substantial evidence may conflict with other
evidence presented. *Staggers*, 496 P.2d at 1163. Furthermore,
simply because the evidence furnishes reasonable grounds for dif-
ferent conclusions is not a reason for overturning the findings.
*Morgen & Oswood Construction Co. v. Big Sky of Montana* (1976),
171 Mont. 268, 557 P.2d 1017, 1021. Gauged by these standards
we do not find the evidence supporting the District Court's finding
as to maintenance and support to be so insubstantial as to warrant
reversal.

■ The District Court awarded $250 per month maintenance
and $200 child support. It based these amounts on its findings that
respondent wife was 56 years old, suffers from physical ailments
that would limit her ability to find employment and has not work-
ed in the past 16 years. The Court found these factors made it un-
likely respondent could find a job which could provide sufficient
monies to support herself with the property she was to receive from
the dissolution of the marriage. The District Court found, on the
other hand, that appellant was employed as a real estate salesper-
son earning the sum of $15,000 per year, and was capable of earn-
ing more with more experience. Appellant argues this is an inap-
propriate finding because there was evidence only that appellant
had earned $7,433.30 from January 1977 to June 13, 1977. How-
ever, the District Court had before it evidence that $7,000 was an
average *annual* income for a realtor in Bozeman, that appellant
had already eclipsed this in the first five months of his employment
and that appellant was, in the estimation of his employer, ag-
gressive and willing to work. We find therefore the District Court's
findings as to the amount of maintenance and support and ap-
pellant's ability to pay such amounts *were* based on substantial
credible evidence and will not be overturned.

■ In its findings of fact, the District Court said with respect to
maintenance for the wife, " . . . Respondent has need for $200 per
month for maintenance . . ." However, in its conclusions, court al-
lowed $250 per month for maintenance for the wife, and judgment

was entered for that sum. Appellant husband does not attack the conclusion on that discrepancy, other than to mention it in his argument that the evidence is insufficient for any award of maintenance. During oral agrument, it was stated that the $200 figure was a typographical error, but the record is otherwise bare as to what the District Court intended. The matter can be handled by allowing the District Court to amend one or the other figure to agree with its actual decision on maintenance.

Affirmed, with leave to the District Court to amend the judgment and findings upon application of either party as to the amount of maintenance to the wife so as to agree with the actual amount found by the District Court as necessary maintenance for the wife. Unless so amended within 15 days of remittitur, the judgment of the District Court is affirmed in all respects.

MR. CHIEF JUSTICE HASWELL and JUSTICES DALY and SHEA concur.