No. 14795

IN THE SUPREME COURT OF THE STATE OF MONTANA

1980

---

HAROLD WOLLASTON,

Plaintiff and Appellant,

vs.

BURLINGTON NORTHERN, INC.,
a Delaware Corporation, and
SANDERS COUNTY, MONTANA,

Defendants and Respondents.

---

Appeal from:  District Court of the Fourth Judicial District,
Honorable Jack L. Green, Judge presiding.

Counsel of Record:

For Appellant:

Smith, Connor, Van Valkenburg & Larrivee, Missoula,
Montana
Paul Smith argued, Missoula, Montana

For Respondents:

Garlington, Lohn and Robinson, Missoula, Montana
Robert Sheridan argued, Missoula, Montana

Kroschel, Peterson and Koolen, Billings, Montana

---

Submitted:  February 22, 1980

Decided:  JUN 17 1980

Filed: JUN 17 1980

Thomas J. Kearney

_____
Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

This is an appeal from a judgment in favor of Sanders County, Montana, upon a jury verdict in the Fourth Judicial District, Sanders County, arising out of a train-vehicle collision in which the plaintiff, Harold Wollaston, was injured.

The collision occurred on January 19, 1974, at a grade crossing approximately one mile east of Thompson Falls, Montana. The plaintiff, Harold Wollaston, was operating a 1967 Pontiac in a northerly direction on the high school road which crosses over the Burlington Northern tracks. At the same time, a freight train operated by the defendant, Burlington Northern, in a westerly direction was nearing the crossing. The collision occurred at approximately 11:30 a.m. At the point of the collision, there is a single track which crosses the high school road. Standard cross-buck signs protected the crossing on either side. There was no other alarm or signal device.

The grade crossing was established pursuant to an easement agreement between Sanders County and Northern Pacific Railway (now merged in Burlington Northern, Inc.) in 1959. The easement agreement provided that the county was to maintain the crossing and road, and that the county would pay for automatic protection required if the county, the railroad or the State of Montana ever found that they were needed.

At the time of the collision, Wollaston was 17 years old. The collision occurred on a clear day in January. There was no posted speed limit on the approach road which is 200 feet in length from Highway 200 to the single track crossing. A speed tape of the train showed it to be going approximately 60 miles per hour before the collision.

Wollaston was severely injured. He brought suit against both Sanders County and Burlington Northern, Inc. Before the

-2-

trial, however, settlement was reached between Burlington Northern, Inc., and Wollaston, and the trial proceeded against Sanders County alone. Sanders County defended on the ground of contributory negligence, which issue is proper since the accident occurred prior to July 1, 1975, the effective date of the comparative negligence statute. Dunham v. Southside National Bank Of Missoula (1976), 169 Mont. 466, 548 P.2d 1383.

The appellant Wollaston presents the following issues for review:

1. Should the appellant, a minor, be held to the same standard of care as an adult in the operation of his motor vehicle?

2. Should the trial court have instructed the jury that contributory negligence was not a bar to recovery if Sanders County was guilty of reckless or wanton misconduct?

3. Did the District Court err in refusing to strike the testimony of witness Joe Sol relative to his opinion as to the cause of the accident?

4. Did the District Court err in allowing evidence of lack of prior accidents at the crossing?

5. Did the District Court err in its instruction relating to the county's duty to maintain roadways?

6. Did the District Court err in refusing part of appellants exhibit no. 5 and in refusing to allow appellant's witnesses to testify regarding the State's recommendation for protection at the crossing?

7. Did the District Court err in failing to give appellant's requested instructions as to the source of satisfaction of any judgment obtained against Sanders County?

8. Was the statement to the jury regarding Burlington Northern's settlement in error?

-3-

Issue no. 1.

At the outset of the trial, the District Court granted the request of Sanders County to grant an order in limine which prevented Wollaston from introducing any evidence that minors are held to a lesser standard of care than adults in the operation of motor vehicles. We hold that a youth driving an automobile is held to the same standard of care as an adult, that is to the degree of care that would be exercised by a reasonable and prudent operator under the same circumstances. In Montana, "[t]he general rule is that after a child has reached the age of fourteen years he is presumed, as a matter of law, to be capable of contributory negligence." Sherris v. Northern Pac. Ry. Co. (1918), 55 Mont. 189, 194, 175 P. 269, 270. See also, E. I. Du Pont De Neours & Company v. Edgerton (8th Cir. 1956), 231 F.2d 430, 435. Nothing in the licensing statutes relating to drivers and operators of motor vehicles distinguishes between adults and minors who are licensees and many states considering the matter have adopted the rule we proclaim here. Prichard v. Veterans Cab Company (1965), 407 Cal.Rptr. 904, 408 P.2d 360; Williams v. Esaw (1974), 214 Kan. 658, 522 P.2d 950; Tipton v. Mullinix (Okla. 1973), 508 P.2d 1072; Restatement (Second) of Torts §283A, Comment C.

Issue no. 2.

Plaintiff, at the close of his case, moved the District Court that the pleadings be amended to conform to the evidence to include the allegation that Sanders County was grossly negligent. The court reserved ruling on the motion. Later, it refused plaintiff's proposed instruction no. 53, which would have told the jury that contributory negligence was not a bar to recovery for injuries caused by the reckless or wanton misconduct of Sanders County. Wollaston claims error in the refusal of this instruction.

-4-

Montana follows the rule that contributory negligence of a plaintiff is no bar to his recovery for injuries caused by the reckless or wanton misconduct of the defendant. Mihelich v. Butte Electric Ry. Co. (1929), 85 Mont. 604, 281 P. 540.

Appellant further cites Mallory v. Cloud (1975), 167 Mont. 115, 118, 535 P.2d 1270, 1272, for authority to the effect that if the wantonness or recklessness of a defendant is a question of fact, it is improper to remove that issue from the jury.

Wollaston relies on the number of letters from 1970 until the date of the accident from various persons and public bodies asking the County Commission of Sanders County to install warning devices at the crossing; from the testimony of persons who orally requested the County Commission to install such signals; and the testimony of Wesley Stearns that the crossing was hazardous or dangerous; that Sanders County had the ability to appropriate money for the costs of signal installation; that Sanders County never established a stop sign at the crossing, nor set a speed limit on trains passing over the crossing; and other factors.

The transcript does not reveal the objections made to proposed instruction no. 53, nor the reasons for which the court refused the same. However, the proferred instruction included the following language:

> "For a defendant to have caused plaintiff's
> injuries by reckless or wantonness conduct,
> it is sufficient if the facts and circumstances
> are such that the consequences attributable
> to the wrongful conduct charged are within
> the field of reasonable anticipation; that such
> consequences might be the natural and probable
> results thereof, though they may not have been
> specifically contemplated or anticipated by
> the person so causing them."

In Hannigan v. Northern Pacific Railway Company (1963), 142 Mont. 335, 347-48, 384 P.2d 493, 499, we defined reckless and wanton conduct as follows:

". . . In the LeCompte case, this court quoting from 38 Am.Jur., Negligence, §178, pp. 855, 856, stated:

"'A defendant's act is properly characterized as willful, wanton, or reckless, within the meaning of the foregoing rule, only when it was apparent, or reasonably should have been apparent, to the defendant that the result was likely to prove disastrous to the plaintiff, and he acted with such indifference toward, or utter disregard of, such a consequence that it can be said he was willing to perpetrate it.'"

Under that rule, the proferred instruction no. 53 incorrectly defined reckless and wanton misconduct, and was properly denied.

Implicit in the appellant's contention respecting this proferred instruction is the argument that the court should have granted the motion of the appellant made at the close of appellant's case in chief to amend the pleadings to conform to the proof. The record shows that a motion was made to amend, "in that respect the county was guilty of gross negligence, or willful and wanton misconduct." The reasons given at the time of making the motion were that there were two instances where letters from the Burlington Northern had requested of Sanders County some response as to whether they desired to have signals installed at the crossing; another, that a group of citizens had appeared before the county commissioners asking that such signals be installed but that these requests were ignored or not acted upon by Sanders County. The court reserved ruling on the motion, and asked counsel not to let the court forget to rule on it before the case got to the jury. However, no further motion or discussion appears in the record on this motion.

Because their record is devoid of any ruling on the motion to amend the pleadings, and because the court's ruling on the proferred contributory negligence instruction

-6-

may have been on the ground that the instruction was insufficient as a matter of law, we will deem that the motion to amend the pleadings was denied by the court. In Joy v. Little (1958), 134 Mont. 82, 90, 328 P.2d 636, 640, we said that the better practice is for a party who desires to have his pleadings amended to conform to proof admitted without objection is to have the amendment actually made. We also said in that case that amendment will not be permitted when the effect is to depart from the original cause of action or to make a new case and one different from that alleged in the pleadings. We held it may be done only to correct the pleading in certain of its particulars, but leaving the case controlled by the pleadings as to the nature of the cause of action or defense.

However, Joy v. Little, supra, was decided before the adoption in Montana of the Federal Rules of Civil Procedure (Ch. 13, Laws of Montana 1961). In effect, the rules provide for notice pleadings. Rule 15(b), M.R.Civ.P., provides that issues not raised in the pleadings, if tried by express or implied consent, are treated as though pleaded, and motion to amend pleadings to conform to the evidence and to raise such unpleaded issues may be made at any time. Wollaston's motion in effect raised a new issue of affirmative defense, which can be done under Rule 15(b). Moore's Federal Practice Vol. 3, § 15.13(2), at 15-165, rel. 41-8/78). Wollaston would be entitled to the amendment, and to instructions thereunder, unless there was no evidence to support the motion to conform.

As we examine the evidence, while there was sufficient evidence of negligence on the part of Sanders County to submit that issue to the jury, we find as a matter of law that the evidence was lacking to indicate that Sanders County was indifferent to or utterly disregarded the consequences to the

-7-

plaintiff, the elements necessary to constitute willful, wanton or reckless negligence. In that situation there was no abuse of discretion by the District Court in refusing to change or add a legal theory of defense after the introduction of all the evidence. Caddy-Imler Creations, Inc. v. Caddy (9th Cir. 1962), 299 F.2d 79, 84.

Thus the decision of the District Court not to allow the amendment to the pleadings here rested within its sound discretion, and will not be set aside by us unless we find it clearly erroneous. We find no such clear error here.

Issue no. 3.

The District Court refused to strike the evidence of highway patrol sergeant Joe Sol that the incident occurred because Wollaston failed to yield the right of way at the grade crossing. The contention that the District Court erred is based on two grounds, (1) that the opinion reached the ultimate fact to be determined by the jury, and (2) that Wollaston was deprived of full examination by virtue of the fact that officer Sol had lost the notes made by him at the time that he investigated the accident.

We have held in Montana that the opinion of the investigating patrolman as to the cause of the accident, on the basis of failing to yield the right of way, is admissible. Rude v. Neal (1974), 165 Mont. 520, 530 P.2d 428, 432. Under Rule 704, M.R.Evid., testimony from an expert is not objectionable because it embraces the ultimate issue to be decided by the trier of fact. The question here is whether the patrolman should have been allowed to give his opinion as to the cause of the accident in view of the fact that he lost notes which he had made during the investigation. In that connection, we look at Rule 705, M.R.Evid., with respect to this point:

-8-

"The expert may testify in terms of opinion or inference and give his reasons therefor without prior disclosure of the underlying facts or data, unless the court requires otherwise. The expert may in any event be required to disclose the underlying facts or data on cross-examination."

Rule 705, makes a substantive change in the method of questioning experts and obtaining their opinions. As the commission comment noted following this rule, it avoids the traditional requirement for a hypothetical question to the expert. As a matter of fact, under the first sentence of the rule, the expert can give his opinion "without prior disclosure of the underlying facts or data" unless the court otherwise requires. Plainly under this section, Sol's testimony respecting his opinion was admissible, irrespective of what underlying facts or data may have buttressed his opinion. It is then a matter for a cross-examiner to determine the underlying facts based on which the expert bases his opinion and expose the weaknesses, if any, in those underlying facts for the consideration of the jury. Here the jury was made quite aware by the cross-examiner that the patrolman had lost his original notes, and that he was basing his opinion on his recollection, photographs and documents he examined during the trial. The intent of Art. VII, M.R.Evid., Opinions and Expert Testimony, is to make persons possessed of specialized knowledge helpful in assisting the trier of fact to understand the evidence. As long as the cross-examiner is given adequate opportunity to bring forth for the jury's consideration the weaknesses of any assumptions or facts underlying the opinion, the weight to be given the expert's testimony even on the ultimate issue, is now for the jury to determine. In that situation, we do not find prejudicial error here as to the testimony of the highway patrolman.

Issue no. 4.

The District Court had made an order granting plaintiff's motion in limine to exclude evidence of the absence of previous accidents at the crossing on the condition that Sanders County could use such evidence in their defense if Wollaston created an issue of whether "everyone should have known the crossing's dangerous condition". During the trial, the court allowed Russell Hartse to testify that there has never been any previous accidents at the crossing.

Wollaston had called Dr. William D. Berg to testify as an expert witness concerning the need for additional protection at this grade crossing. On his cross-examination by Sanders County, it was developed that one of the factors he would look for in determining whether a crossing was dangerous is whether there had been prior accidents. Sanders County now claims that the lack of prior accidents became an issue because of this testimony, which went in without objection.

Sanders County is in the position of having created the issue through cross-examination to fit within the exception provided by the District Court in its order in limine. Ordinarily we would not give weight to that sort of legal maneuvering, but irrespective of the court's order in limine, it appears that whether there have been prior accidents at this crossing is relevant to the issue that additional production was needed. The appellant here seeks to hold Sanders County liable on the ground that it did not provide additional protection for the crossing and was negligent or grossly negligent in not so providing. It is clear that whether there had been accidents at the grade crossing would be relevant to the issue of the need for such additional protection. Under Rule 402 of the Montana Rules of Evidence, "[a]ll relevant evidence is admissible". The evidence was admissible here regardless of the order in limine.

-10-

Issue no. 5.

Wollaston claims error in the giving by the District Court of the following instruction:

"A county or other governmental entity is under no duty to keep its streets and roads clear of snow and ice or to use sand or other abrasive substance unless the condition caused by the snow or ice constitutes an unusual or dangerous obstruction to travel."

Wollaston's objection was that the instruction did not provide an accurate statement of the law as related to this case.

The question presented is whether we should pin any liability on the county either under its contract to maintain the crossing, or under its duty as a governmental entity, for failure either to sand the surface of the grade crossing or remove the accumulated ice. As to the agreement to "maintain" the grade crossing, we would determine that the duty under that agreement does not extend further than the ordinary duty of a governmental entity with respect to accumulations of snow and ice.

Wollaston claims that there was "black ice" on the surface of the roadway leading to the crossing. The patrolman testified that he observed some ice, which was melting at the time that he arrived at the accident scene, perhaps an hour later. Wollaston's vehicle left skidmarks of 20 feet to the point of collision, not unusual in view of his speed of 15 to 20 miles per hour approaching the intersection. Nothing in the evidence specifically indicates that the icy condition of the surface brought about the collision with the train.

The instruction given by the court follows the duty required of a municipality as set forth in O'Donnell v. City of Butte (1922), 65 Mont. 463, 475-476, 211 P. 190. In Luebeck v. Safeway Stores, Inc. (1968), 152 Mont. 88, 93,

-11-

446 P.2d 921, 924, this Court held that where danger created by the elements such as the forming of ice and the falling of snow are universally known, or actually known, there is no liability on the part of a landowner. Because Luebeck did not relate to a governmental agency, no reference is made in that case to the O'Donnell case. In the O'Donnell case, it was stated that the dangerous, unusual, or exceptional conditions which required sanding or other actions by the governmental entity meant conditions so different in character from those ordinarily brought about by the winter weather prevalent in a given locality, as to create an interference in travel. We find no vice in the instruction given by the court in this case, because under the facts shown, we do not determine that the county violated the standard of ordinary care in its maintenance of the grade crossing, whether as a matter of fact or a matter of law.

Issue no. 6.

This issue relates to the refusal by the District Court of some evidence, and the admission of other evidence, which went to the issue of the need for flashing lights and crossing gates at this grade crossing.

John Fisher called on behalf of the plaintiff testified that as an employee of the Forest Service, he had taken a traffic count at this crossing by using mechanical recorders in October 1973. His exhibit one and his personal testimony showed there were 425 vehicles per day at that time. This information was transmitted by the Forest Service to the mayor of Thompson Falls, but not to Sanders County.

The court admitted the first four pages of exhibit 5, which was the State of Montana's Railroad Crossing Protection Policy but refused the last two pages of that exhibit on the

-12-

ground that the hazard rating for the crossing in 1977 was not necessarily connected to the hazard rating in 1974, the time of the accident.

The District Court has allowed respondents exhibit no. 2, a letter from the Department of Highways dated July 24, 1974, stating that the crossing in question had a hazard index of 116.4. The effect of this letter would be that since the hazard index did not exceed 200, no other signals were required at the grade crossing. It was contended however, that this exhibit should not have been admitted because the letter was not received by the county until six months after the date of the accident. The 425 car count found by the Forest Service would have established a hazard index at the crossing of 438. The court refused a hypothetical question to a witness (Morgan) based on the assumption of either 250 or 425 daily car counts as to the need for additional protection of the crossing. Morgan was an employee of the Montana State Highway Department whose job was to establish priorities for upgrading railroad crossings under a Montana safety program. If Morgan had been allowed to testify, he would have stated that the crossing warranted additional signals under Montana's policy on January 19, 1974. The letter from the Montana State Highway Department dated July 24, 1974, was from Jack R. Beckert, the administrator of the engineering division, to the county commissioners. The letter indicated that the crossing had a hazard index of 116.4 and additional signals were not warranted according to Montana's Protective Policy.

The court at first had refused to admit exhibit two, the letter, on the basis that the hazard index therein was not based on actual count. Later, when another witness was testifying, it admitted the exhibit as a business record between the State Highway Department and the county.

-13-

All of the testimony that related to hazard indices and the adversary contentions with respect to those indices arise because of the passage of the Federal Highway Safety Act of 1973. We discussed some of the implications of this act, insofar as the railroad's duty at a crossing is concerned, in Runkle v. Burlington Northern Inc. (Cause no. 14629, Decided June 16, 1980). There we stated that the Federal Highway Safety Act of 1973 represents an effort by the federal government to improve the safety of grade crossings, and to provide funding for the same. The act does not lessen in any degree the duty, statutory or common law, of a railroad, and in this case, the county which by contract was bound to maintain a good and safe crossing.

By virtue of section 61-8-202, MCA, the Montana State Highway Department was required to adopt a manual on specifications for a uniform system of traffic control devices throughout the state. Under this statute, and subsequent studies, the Department has promulgated the Manual for Uniform Traffic Control Devices (MUTCD). Unless an order by an authorized public entity has been issued to a railroad or to some other entity to provide certain signals at grade crossings or other traffic control devices, the Manual does not have the force and effect of law. Williams v. Maley (1967), 150 Mont. 261, 267, 434 P.2d 398, 401. In this case the court by instruction defined ordinary care, and by further instructions told the jury that public authorities have the duty to exercise ordinary or reasonable care to plan and design the highways to make them reasonably safe for the traveling public; and further that the duty of the county in maintaining the crossing was commensurate with the increased hazard occasioned by any ob-structions so that it was the duty of the county to exercise ordinary care under the circumstances shown. In his personal

testimony before the court, witness Morgan had informed the jury that when an intersection had attained a hazard index in excess of 200, that number would under the Manual require additional grade crossing protection.  He further testified that this crossing had a hazard index of 258, and if 425 cars were crossing daily, a hazard index of 438. These were factors, therefore, which the jury could consider in determining whether or not the county exercised ordinary care in failing to provide additional signals or devices at the crossing.  The claimed errors under this issue were therefore not prejudicial to Wollaston's case, since they were only cumulative on one side or the other of the issue.

Issue no. 7.

The court instructed the jury as follows:

"You are instructed that you are not to con-
sider in what manner the defendant Sanders
County meets its obligation as to judgment
if rendered against it in this case."

That instruction was offered by Wollaston, after the court had refused the earlier instructions from Wollaston on the same subject.  Wollaston claims that his first such in-struction should have been given.  In general it would have told the jury that the county could have satisfied any judgment against it out of insurance, its general funds, property taxes, or proceeds from the sale of bonds.

Wollaston contends that the jury should have been given the first instruction so that the "juror-taxpayer" problem would be eliminated in that the jury would put aside the fact that they were taxpayers if they were informed that insurance was a possible method of satisfying the judgment.

Wollaston's proposed instruction followed section 2-9-316, MCA, as to methods or political subdivisions to satisfy final judgments.  However, the method of satisfying a judgment

-15-

is not a concern of a jury determining liability and fixing damages. The instruction given by the court properly informed the jury that it should not concern itself on that point. Any further instruction about possible sources of payment of a judgment might have led the jury into speculation on issues not properly before the jury as a trier of fact. The court properly instructed the jury on this point, and the presumption is that the jury followed the proper instructions of the court in reaching its determination. Staggers v. United States Fidelity & Guaranty Co. (1972), 159 Mont. 254, 496 P.2d 1161.

Issue no. 8.

With respect to the settlement by Burlington Northern with the plaintiff, the District Court advised the jury as follows:

> "You are advised that the Burlington Northern Railroad was a Defendant in this case and that the Plaintiff settled with the Burlington Northern before this case came to trial on November 14, 1978. You are to decide the issues presented to you in this case without regard to that, and you shall award the plaintiff those damages, if any, he is entitled to according to the instructions and proof in this case."

Wollaston objects that the statement given by the District Court did not include his proposal for a statement that would have told the jury "if you find for the plaintiff in this case, and determine damages against Sanders County, the court shall reduce those damages by the amount provided in the agreement between the plaintiff and the Burlington Northern railroad." In Bohrer v. Clark (1978), ___ Mont. ____, 590 P.2d 117, 125, 35 St.Rep. 1878, we held that whether to reveal to the jury the terms of settlement and the fact that the court will make a deduction of the settlement from any eventual award were matters that should be left to

the discretion of the trial court.  We also held that the trial court's decision would not be disturbed unless it clearly appeared that a fair trial had been jeopardized. In this case, the statement on its face is fair and it cannot logically be claimed that the statement as given jeopardized Wollaston's fair trial.  The presumption is, as we have said above, that the jury followed the instructions of the court. Staggers, supra.

CONCLUSION

Since we find no reversible error, the judgment of the District Court is affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____
Justices